JANVIER, Judge.
At about 10:30 o’clock on the morning of January 28, 1949, Mrs. Augusta C. Johnson, wife of Albert A. Johnson, while walking on the sidewalk of Poydras Street, in New Orleans, stepped upon the metal cover of a plumbing appliance box which was embedded in the sidewalk and sustained physical injuries when the cover, which was defective, gave way and her right foot and the lower part of her right leg were precipitated into the hole.
Alleging that the said box contained equipment which was a part of the system maintained by the Sewerage and Water Board of the City of New Orleans and that, for that reason, the said Board was *230 Hable, and that the owners of the adjacent property and also the tenant in the property were also liable as a result of the defective condition of the sidewalk and because the box of which the cover was defective “contained a water valve connecting with water pipes leading from the outside water lines into' the said premises,” Mrs. Johnson, in an original and supplemental petition, brought this suit, praying for solidary judgment in the sum of $5,554.05 against the said owners of the adjacent premises, the tenant who operated a restaurant therein, and the Sewerage and Water Board of New Orleans.
In still another supplemental petition Mr. Johnson joined his wife as a party plaintiff, reiterating and adopting all of the allegations of her petition and, alleging also that he, as head and master of the community, had sustained damage, such as the loss of Mrs. Johnson’s salary and the cost of medical and other related expenses amounting in all to $554.05, he prayed for judgment for that amount, reducing the claim of his wife for her pain and suffering to $5,000.
The owners of the property and their tenant filed exceptions of no cause of action based on the contention that neither the owners of adjacent property nor the .tenant who occupies the property may be held liable for damage resulting from the defective condition of a sidewalk.
The Sewerage and Water Board filed answer in which it denied that it was the owner of the water valve in question or that it was in any way “bound, either under contract or by law,” to maintain said water valve or the box or the cover thereon.
In the Civil District Court for the Parish of Orleans the exceptions of the owners and of the tenant were maintained and the suit ordered dismissed as to them. On appeal we held that there might be circumstances under which an owner of adjacent property, or even possibly a tenant occupying such property, may be held liable where, for instance, a defect is actually created by fault on the part of the owner or of the tenant, and we reversed the judgment which had dismissed the suit as against the owners and the tenant and remanded the matter to the Civil District Court. See Johnson v. Sewerage and Water Board, La.App., 57 So.2d 923.
A compromise was then effected between the plaintiffs, Mr. and Mrs. Johnson, and the owners of the property and suit as against the said owners was dismissed. However, all rights against the tenant and against the Sewerage and Water Board were retained by the plaintiffs. The suit was also dismissed as against the tenant and all .rights were retained against the owners and the Board. The matter is now before us on appeal by the plaintiffs from a judgment dismissing their suit as against the Sewerage and Water Board.
In the sidewalk between the curb line and the property line there are three metal boxes in which service equipment of various kinds is located. Each was or should have been adequately protected by an iron cover. Nearest the curb was a large round box protected by a cast-iron cover in which, in large letters, were cast the words “Water Meter”' and “Sewerage Sr Water Board of ■New Orleans, La.” In this large box was located a water meter which, for the purpose of enabling the Board to figure the water-charge to be assessed, registers the quantity of water which passes from the mains of the Board into the private premises of the owner and of the tenant. In this box was also located a cutoff valve by which the supply of water going into the premises might be cut off by the Board.
While counsel for plaintiff made a feeble effort to convince us that there was on separate cutoff valve in this box, the record leaves no room for doubt on this point. About one foot from the large round box and between it and the premises of the owner there was a smaller square box over which there was a square cast-iron cover, and it was the defect in the cover of this box which caused the damage complained of by plaintiffs. The third metal square box situated still nearer to the property line is in no way involved in this controversy.
In the box on which there was the defective cover there was what is known as *231 a “stop and waste valve.” This valve afforded a means by which the water supply to the premises might be cut off, and the valve was so constructed that the “waste” or drain hole on the premises side of the valve would open when the valve was cut off, with the result that when the flow of water would be cut off from the main to the premises automatically the water in the pipe lines of the premises would be drained out through this waste valve as a protection against an expected freeze or in order that repairs to the lines of the premises might be made.
The record makes it abundantly clear that this valve was in the line between the cutoff valve at the meter of the Board and the premises of the owner and that the Sewerage and Water Board had no interest whatever in this stop and waste valve, except that the regulations of the Board require that every owner should have such a valve so that the owner in case of freeze or for any other reason might cut off his own water without tampering with the cutoff valve of the Sewerage and Water Board, which was located in the larger round box nearer to the curb line.
Concerning this stop and waste valve, which is in the box which caused the damage, Mr. F. G. Fischer, the superintendent of plumbing of the Sewerage and Water Board, gave the following testimony:
“Q. * * * we are investigating here an installation which has been termed as a stop and waste valve. Can you tell us what that is, and the purpose of it ? A. That is a valve that is installed by the plumber for the owner adjacent to the building, for shut-off purposes in case they have trouble inside of the property, for closing off their supply to make repairs or to add in additional work, fixtures, water connections and so forth.
“Q. That is placed there for the convenience of whom? A. The owner.
“Q. And by whom is it paid the installation? A. By the owner.
“Q. By whom is it maintained? A. By the owner.”
He also said that the Sewerage and Water Board had nothing whatever to do with this valve and that it was “separate and distinct” from the stop valve of the Board located at the water meter. This testimony is fully corroborated by other witnesses of the Board.
It does appear that where an owner of property, through a plumber of his selection and for whose service the owner pays, connects the water line of the owner to the supply line of the Sewerage and Water Board which is located in the larger round box, the Sewerage and Water Board inspects the connection to determine that the connection is properly made, but it is made very clear that, after that first inspection, the Board has nothing further to do with maintaining or inspecting that part of the line which is in the box of the owner.
It is also made clear that the box of the owner, in which the stop and waste valve was located, had been installed many years before the occurrence of the accident, probably as early as the year 1910.
Counsel for plaintiff, in their argument that there is only one such valve which is used by both the owner, when repairs to his system are necessary, and by the Board when it becomes necessary to cut off the supply of water from its mains, maintain that they find encouragement in the regulations of the Sewerage and Water Board which, it is true, do contain a paragraph heading which may give the impression that the “stop cock” which is a part of the system of the Board, is the same contrivance as the “stop and waste cock”, which is a part of the plumbing equipment of the owner. These rules require in paragraph Four that
“the installation of the stop cock and meter is * * * to be done by regular employees of the Sewerage and Water Board * * *.”
And following that regulation we find that rule No. 7 is headed in large letters by. *232 the words “Stop Cock” and this rule No. 7 provides that
“There shall be a stop and waste cock attached to every supply pipe at a point close to where it leaves the ground and sufficiently low and conveniently located that the water may be readily cut off at any time to admit of pipes being drained.”
Counsel say that this indicates that the “stop cock”, which must be installed by the Sewerage and Water Board, is the same as the stop and waste cock which is required under rule No. 7. This is obviously not so. The heading of rule No. 7 should have been “Stop and Waste Cock,” and had that rule been so headed the contention which counsel for plaintiffs make on this particular point would have had no foundation whatever.
Counsel for plaintiffs further argue that, since the defective cover on the box was located in the sidewalk, it must follow that the box was under the control of the Board, because rule No. 4, from which we have already quoted requires that the running of the service pipes “from the main to the property line” shall be done by the Sewerage and Water Board, and they argue that, since, under that rule, the Sewerage and Water Board runs the water lines to the property line, this box, being outside the property line, must have been placed there and must have been maintained by the Board.
The record shows, and there is no doubt whatever on this point, that in most cases where there is space between the building and the property line this service box of the owner is installed inside the property line and that the Sewerage and Water Board in such cases runs the lines from its mains to the property line and the owner picks it up there and runs it to his own service box, but that where the building is located on the property line and there then remains no space for the location of the owner’s stop and waste cock on the property, the owner, for his convenience, is permitted to locate his stop and waste cock in the sidewalk, and the Board is then responsible only for the installation and maintenance of the line from its mains to its own stop cock and meter.
One additional argument of counsel for plaintiffs remains. They point to section 30. of Act No. 6 of the Extra Session of 1899, LSA-R.S. 33:4090, which requires:
. “All connections with the sewerage and water mains shall be made at the cost of the board from the mains to the edge of the foundations of the buildings on the property line, or if there are no foundations on the property line, then to the property line itself, and from that point on, they shall be made at the cost and expense of the owner of the property.”
All that this means is that the owner may require the Board to run its water line to the foundations of the building or to the property line, but surely it does not deprive the owner of the right to locate his own service box in the sidewalk if, for the reasons already given, he desires to do so, and it follows that if he does so desire, the Board then is responsible only for the running of the line to its cutoff valve and meter which is. in its own box in the sidewalk. The evidence shows that this box was installed probably in 1929, and probably not by the Board. It shows that since that time the Board has had nothing to do with its maintenance.
Counsel vehemently protest that, even if the Board had nothing to do* with the maintenance of this cover, they should have maintained an inspection service and by th'is service should have discovered the defective condition of the cover. We find no substance whatever in this argument. If the Sewerage and Water Board was under no duty to maintain the box, there is no reason why they should be held liable for failure to discover its defective condition.
The judgment appealed from is affirmed at the cost of appellants.