LANDRY, Judge.
This action evolves from the collision of an automobile with a tree felled by Hurricane Betsy across Louisiana Highway 44, a two-lane black-topped highway. The accident occurred at dusk dark, approximately 6:30-7:00 P.M., Friday, September 10, 1965, the day after Hurricane Betsy cut its swath through this state. Defendant (Department) takes this appeal from the judgment below awarding Mr. and Mrs. Warren D. Porta damages for the death of their seventeen year old daughter, Martha Faye Porta, who was killed when the automobile being driven by her host, Glen Dencausse, collided with the tree.
The trial court in finding for plaintiffs did not favor us with reasons for judgment. In essence, plaintiffs contend the Department was aware of the obstruction and negligently failed to remove it. The Department defends on the grounds (1) it was not derelict in removing this particular obstruction because hundreds of trees and other obstructions blocked the highways after the storm; (2) it utilized all available personnel to remove obstructions as soon as conditions permitted following the hurricane; (3) the accident occurred solely due to the fault of Dencausse who was aware of the presence of the tree inasmuch as he had passed the obstruction at least once prior to the accident; (4) decedent was guilty of contributory negligence in traveling upon the highways despite repeated warnings via radio and television to motorists to stay off the roads because of the danger to travel resulting from widespread fallen trees, downed utility lines and debris littering the highways, and (5) decedent was also con-tributorily negligent in that she was personally aware of the presence of the tree, having been with Dencausse on at least one prior occasion during the day when he passed this obstacle.
*66 We reverse the judgment rendered below upon finding that plaintiffs have failed to establish defendant’s negligence by a preponderance of evidence as required by law.
Except as hereinafter shown there is little dispute concerning the events surrounding the tragedy in question. At the scene the highway runs in a generally northerly-southerly direction. The fallen tree formerly stood on the east side of the road at a point estimated at three miles from Gonzales or halfway between Gonzales and Burnside. The tree was blown down completely across the highway, its top branches extending at least partially onto the west shoulder of the road. There is some evidence that the tree may have been “topped” on the morning of the accident to clear the west shoulder of the highway. The testimony, however, does not show whether it was in fact topped or, if so, by whom. In any event, the highway was passasble in that motorists could skirt the obstacle by traveling on the western shoulder of the roadway.
The night of the storm was spent by the entire Porta family at the home of a daughter who lived in the vicinity of Prairieville, several miles from the Porta residence. Before noon on the day of the accident, Mr. Dencausse, accompanied by his brothers and sisters and decedent, drove from Den-causse’s residence in Prairieville to the Porta home to determine the condition of things following the hurricane. About three miles out of Gonzales, Dencausse encountered the tree completely blocking the highway except for its west shoulder. He drove around the tree on the shoulder of the road, proceeded to the Porta residence and remained there for approximately one-half hour. On the return trip, Dencausse again traveled on the shoulder of the road to avoid the tree. At approximately 3:00 P.M. that afternoon, Dencausse and Miss Porta again proceeded to the Porta residence using the same route and again passed the fallen tree in the same manner. On the return trip at approximately 6:30 to 7:00 P.M., Den-causse struck the tree.
Dencausse’s testimony is to the effect he was traveling at approximately 50 miles per hour with his lights on because it was almost dark. He encountered an oncoming lighted vehicle whose lights appeared to be extremely high which led him to believe the vehicle was a tractor, which in fact it was. Dencausse then looked back at the roadway and saw the tree directly in front of him. He did not have time to apply his brakes before crashing into the obstruction. According to Dencausse, the weather was clear at the time of the accident and the tree in question was the only obstacle blocking the highway between Gonzales and Burnside.
Phebert Roth, who lived approximately 200 feet from the site of the accident, stated in substance that at approximately 10:00 A.M. on the morning of the accident, he observed “two or three highway department trucks” in the vicinity of the fallen tree. He viewed this incident from his premises and could not say how long the trucks remained in the area. Neither did he know whether the persons in the trucks cut off any portion of the tree although he was of the opinion the vehicles remained quite a while. He did not know whether the tree completely blocked the highway. It was Roth’s opinion that at the time of the accident the weather had cleared. When asked to give the color of the trucks observed or how he could identify the vehicles as Department equipment, his reply was “I know a highway truck when I see it.”
Mr. Paul Sale, whose vehicle lost a tire in a collision with the tree shortly before this accident, testified he was changing the tire in Roth’s driveway when his car was struck by that of Joseph Longa who veered to miss the tree and ran into the ditch. Sale also stated that the highway between Gonzales and Burnside was still littered with debris at the time of the accident in question. He also stated that the wind was rather high and the weather unclear.
Joseph Longa in essence testified he had passed the tree earlier in the day. He was *67 returning at about dusk at which time the wind was still blowing but the rain had stopped. He saw the tree in time to swerve and miss the tree but, in so doing, he went into the ditch and ultimately collided with Sale’s vehicle. Two or three minutes thereafter the Dencausse vehicle ran into the tree. According to Longa, this particular tree was the only obstruction in the highway between Gonzales and Burnside. He acknowledged there were power lines down in the area but that these did not obstruct the highway.
H. L. Heflin in substance testified he was the Department’s Maintenance Superintendent for the area in question. On the morning after the hurricane he arrived at work as soon as conditions permitted, about 7:00-7:30 A.M. Orders were immediately given the Department’s employees to commence clearing the highways. All available men and equipment were assigned to the clearing process. A prearranged disaster plan was ordered put in operation. According to plan, the crews commenced clearing the main highways to make the roads safe for traffic. Trees and power lines were cleared as they were encountered. It was the Department’s policy to first clear only the traveled portions of the roads to open them to vehicular traffic and not necessarily clear the entire right of way. He had no knowledge of this particular tree lying across the highway. He conceded that he personally put out no flares or other warning devices and due to the widespread devastation and destruction, it was impossible to place some sort of warning device around each obstruction or source of potential danger.
Ancil Otts, Department Foreman in the area in question, testified substantially that clean up operations commenced as soon as possible the morning after the storm. Following the prearranged disaster plan, all employees and equipment were utilized. It was the policy to require crews to remove obstacles such as trees completely from the traveled portion of the highway — not just top trees. For this reason, he did not think that any of his crewmen had topped the tree in question to provide a passage on the shoulder of the highway. He stated that if they did so, they were disobeying express orders to the contrary. Otts acknowledged he put out no flares or warning signs as there were not sufficient devices of this nature to place at the hundreds of obstructions in his area. He explained that it was the policy to first clear the main highway (in his area, the Baton Rouge-New Orleans Highway) and then work on the secondary roads. He conceded that if his crews encountered an obstruction, they should have removed it before proceeding further. He also explained that special problems were encountered with downed electrical lines which were extremely dangerous to inexperienced personnel. For this reason, the Department’s crews were ordered not to touch electric transmission lines but to summon the electrical companies when damaged transmission lines were encountered. He also explained that since telephone lines posed no such danger, his crews were ordered to clear roadways of such obstructions. He further testified that about Monday or Tuesday of the following week, he was notified by the local sheriff’s office that the tree in question was still blocking the highway. Upon receiving the notice, he caused it to be removed that same day.
We judicially note that Hurricane Betsy wrought incalculable damage in the area through which it passed. Hundreds of residences were destroyed or seriously damaged. Trees, power lines, and debris from buildings, signs and other structures littered and obstructed highways such as to make motoring patently dangerous. Warnings against travel were broadcast continuously during the following day by all news media. Motorists who ventured upon the highways the following day did so under conditions of extreme danger, knowledge of which must be charged to every individual of ordinary intelligence. We likewise note judicially that it was physically impossible for the Department to clear *68 all affected highways of obstructions during the day following the disaster in question.
Broadly defined, negligence is the breach by defendant of a duty of care owed the injured party. Craig v. Burch, La.App., 228 So.2d 723. Whether there is a breach of such a duty depends upon the facts and circumstances of each particular case. Craig v. Burch, above. The degree of care owed others increases in relation to the danger inherent in a given situation. Craig v. Burch, above. Where the duty of care exists, the law envisions ordinary or reasonable care meaning that degree of care which would ordinarily be exercised or which is reasonably expected of an ordinarily prudent individual under the same or similar circumstances. Tucker v. Travelers Insurance Company, La.App., 160 So.2d 440.
Viewed in the light of the foregoing applicable principles, we must exonerate the Department from negligence in this instance. Concededly, the Department owed the traveling public the duty of clearing the highways of obstructions as quickly and expeditiously as possible under the prevailing circumstances.
We are convinced that the clean up necessitated by the disaster was of astronomical proportions. It was so vast it could not possibly have been fully completed by the time of the occurrence of the accident in question, or even within a day or two thereafter. Unquestionably, all obstructions could not be moved simultaneously, some had to wait until the clearing crews reached them in due time. We likewise find that as soon as conditions permitted on the day following the hurricane, the Department’s employees charged with clearing the area in question immediately effectuated a prearranged plan designed to cope with such conditions as speedily as possible. With no delay whatsoever crews were formed, assigned all available equipment, and set to work clearing the highways. The instructions issued were to clear all main highways first, which seems reasonable considering maximum public benefit would result from main traffic arteries being given priority for clearance. Instructions to crews included the admonition to clear obstructions as they were encountered and, in each instance, clear the entire traveled portion of the highway though not necessarily the entire right of way.
That this particular obstruction was not cleared at the time of the accident does not render the Department liable. It is not shown that knowledge of this particular impediment to traffic reached the Department prior to the accident. Nor does the testimony of Mr. Roth establish with that degree of certainty required by law that employees of the Department were at the scene on the morning of the accident. Even had the Department had such specific knowledge, it would not, under the circumstances of this case, have necessarily meant the Department was negligent in not removing this particular obstacle sooner. In such event, some employee of defendant would have had to make a judgment as to whether this obstruction was of sufficient importance to dispatch a crew to this precise location rather than work in some other area.
Nor do we find wherein the Department was negligent in not placing flares or other warning signs or signals at this particular obstruction. Again, it is not shown that the Department had knowledge of this precise situation. The testimony of Heflin and Otts is clearly to the effect that if flares and warning signs or signals had been set out, the supply would have very quickly been exhausted.
The judgment of the trial court is reversed and judgment rendered herein in favor of defendant, the State of Louisiana, Through the State Board and/or Department of Highways, and against plaintiffs, Mr. and Mrs. Warren D. Porta, rejecting and dismissing their demands against defendant, with prejudice. Costs of these proceedings to be paid by plaintiffs.
Reversed and rendered.