430 So.2d 1063 (1983)
Alicia Honeycutt, Wife of/and Andrew JONES
v.
The SEWERAGE AND WATER BOARD OF NEW ORLEANS, et al.
No. CA-0300.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1983.
Rehearings Denied May 24, 1983.
*1064 Roy J. DiVincenti, III, Pitard, Pitard & Porobil, New Orleans, for plaintiffs-appellees.
Thomas W. Milliner, Deputy City Atty., Salvador Anzelmo, City Atty., New Orleans, for defendant-appellee City of New Orleans.
Gerard M. Victor, Sr. Counsel, Sewerage & Water Bd. of New Orleans, New Orleans, for defendant-appellant Sewerage & Water Bd.
Donald A. Hoffman, Camp, Carmouche, Palmer Barsh and Hunter, New Orleans, for defendant-appellee Nat. Bank of New Orleans.
Before SCHOTT, GARRISON and BARRY, JJ.
SCHOTT, Judge.
This is a suit by plaintiff, Alicia Honeycutt Jones, for damages resulting from her stepping into an open drain cleanout on a city sidewalk. Defendants are the Sewerage & Water Board of New Orleans, the City of New Orleans, the National American Bank. They filed third party demands against one another. The trial court awarded plaintiff a judgment of $98,908 against the board and the city. Her suit against the bank was dismissed. Plaintiff has appealed seeking an increase in the amount of the judgment and the board and the city have appealed. The issues are the applicability of LSA C.C. Art. 2317's strict liability to the facts of the case; whether the bank as an adjoining property owner has any liability for this drain cleanout located on a city sidewalk; whether the board had liability for the defective drain cleanout under the applicable statutes and jurisprudence; whether the city has any liability for a defective drain cleanout by virtue of its ownership of the sidewalk where the *1065 cleanout is located; and whether the quantum of damages is so low as to constitute an abuse of discretion on the part of the trial court.
This accident occurred at about 6:30 p.m. on Sunday, November 11, 1979. Plaintiff was walking along the sidewalk in front of the National American Bank when she stepped into an open drain cleanout. Her leg went into the hole to her thigh and she was stuck there until ambulance personnel released her. It was dark and the area was shaded from nearby lights by an oak tree. After the accident the cover of the drain cleanout hole was found leaning against this tree.
At the outset we dispose of defendant's plea of contributory negligence. The trial court specifically found that defendants failed to prove that plaintiff was contributorily negligent and the record supports this conclusion. Plaintiff breached no duty of seeing what she should have seen when she stepped into this trap in this dark area while she was walking along the sidewalk with her friend. The first serious issue to be addressed is the applicability of strict liability to this accident.
In Loescher v. Parr, 324 So.2d 441 (La. 1975) the court held that the owner of the thing is strictly liable, i.e., without any negligence on his part, for harm resulting from a defect in the thing which creates an unreasonable risk of harm to others. In Jones v. City of Baton Rouge, etc., 388 So.2d 737 (La.1980) the court found the city liable to the plaintiff who was injured when the cover over a catch basin suddenly gave way beneath her. The court discussed the Loescher case and reiterated that under Art. 2317 plaintiff must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defectthat is, that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect.
There was no physical defect as such in this drain cleanout cover. It was intact and fit the hole properly when it was returned to its place. Presumably it was removed by some vandal or prankster and propped up against the nearby oak tree. However, we have concluded that the defect involved here was the easy removability of the cover, which under the circumstances of this case constituted an unreasonable risk of harm to others. The record shows that this drain cleanout was installed by the City of New Orleans in 1919 in connection with a paving lien program. Its purpose was to provide access to a drain line connected to the drain in the street and to downspouts carrying rain water from the roof of the adjacent property owner. However, the bank had never made use of this drain line and instead carried its rain water to the back of its property. There is no indication that this drain line was ever used so that the drain cleanout was likewise never needed and never used.
In Goodlow v. City of Alexandria, 407 So.2d 1305 (La.App. 3rd Cir.1981) the court considered the liability of the city for an accident which occurred when plaintiff lost control of his automobile after it struck an open manhole in the street. The cover was found a short distance from the hole and the inference was that it had been removed by vandals or pranksters. There was no physical defect in the cover, and the question was whether it constituted a defect such as to make the city liable under Loescher v. Parr and Art. 2317. The court exonerated the city because the removability of the manhole cover in the case was not an unreasonable risk of harm to others. The court concluded:
"The sewer system of the city is an absolute necessity, as are the manholes which provide access to the sewers for purposes of maintenance. Since there was no crack, design error, or other imperfection in the manhole or its cover, the only risk suggested is that vandals or thieves might possibly remove the cover, or that a heavy vehicle might possibly strike the cover in precisely the wrong way and kick it off. The question is whether the risk of harm created by these remote possibilities is unreasonable, when balanced against the utility of the manhole and its *1066 cover. Under all of the circumstances of this case, we conclude the risk was not unreasonable."
When the same reasoning is applied to the facts of this case an opposite result is reached. There was no necessity for the existence of this drain cleanout cover. It served no purpose and had not for many years prior to this accident. The risk of harm created by its easy removability was not justified in any way. Having concluded that Art. 2317 applies, the next question is which of the defendants is liable to plaintiff.
There is no factual basis for a finding of liability against the bank. The owner or guardian of the defective thing is liable under Art. 2317. This defective cleanout cover was not located on the bank's property but was on the sidewalk which was owned by the City of New Orleans. The bank gained nothing from its presence in front of its property and had no legal relationship to the cover which would support Art. 2317 liability. Thus, the trial court correctly dismissed plaintiff's suit as well as the third party demands against the bank. The next question is whether the trial court correctly held the board and the city liable to plaintiff.
R.S. 33:4081 provides as follows:
"The board shall have authority over the construction of all underground work necessary or incidental to the sewerage and water systems and overall drains, inlets, catch-basins, etc., and over all connections which may be made to such drains by the city or by provate persons...."
In Breaux v. Leidenheimer, 204 So.2d 59 (La.App. 4th Cir.1967) this court interpreted R.S. 33:4081 to provide that the board had the responsibility to maintain drain cleanout covers located in the sidewalk, such as the one in this case. The board disputes this interpretation of the cited case and refers us to Johnson v. Sewerage and Water Board of New Orleans, 84 So.2d 229 (La. App.Orl.1956) to support its position that the board is not responsible for a drain cleanout cover because it is within the property line of the individual. However, this case is not helpful to the board's case here because it involved a defective cover over a cutoff valve well within the owner's property. The court assigned responsibility for that cover to the owner of the property as opposed to the board. In the instant case there is no private owner involved in the use of or benefit from this drain cleanout cover. The issue is the board's liability as opposed to the City of New Orleans and not as opposed to a private owner who makes use of and derives some benefit from such a cleanout.
In the Loescher case the court explained that "the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk." Under this language the board must at least share the loss considering the facts of the case. The evidence shows that when a missing or broken drain cleanout cover is brought to the board's attention it assumes the responsibility of barricading the hole and protecting the public. According to the director of the streets for the city, when a defective cover such as this is brought to the city's attention it notifies the board to take action. The board attempts to force the property owners to replace missing covers. It makes the covers and offers them for sale to property owners. If a property owner fails to replace a missing cover the board does the work itself. The board does make use of cleanouts like the one in this case in order to unstop the line between the sidewalk and the street. These facts seem to show that the supervision, care, or guardianship of these drain cleanouts rest at least to some extent in the board.
Furthermore, the board's responsibility for the drain cover in this case is supported by its relationship with the city as far as the drainage system is concerned. In 1919 the city constructed the drainage system along Broad Street and installed the drain cleanout in question as part of the system. But while the city was the owner of the system R.S. 33:4071 provides that "the drainage system of the City of New Orleans *1067 shall be constructed, controlled, maintained and operated by [the] Sewerage and Water Board." (Emphasis added)
We are dealing here with a missing cover over a hole in a sidewalk owned by the City of New Orleans. The hole provides access to a drainage line constructed and owned by the city but serving no useful purpose. R.S. 33:4071 assigns responsibility to the board for that drainage line, the hole, and its cover since these are all components of the city's "drainage system." The city is heavily involved in the management of the board especially through the appointment power of the mayor. R.S. 33:4071. In practice the two entities cooperate in dealing with problems involving manholes and catch basins in the streets as well as drain cleanouts on the sidewalks. This is not the case for these two governmental entities to be pointing at each other in an effort to avoid responsibility to plaintiff. There was no private citizen involved in the ownership or custody of this thing and the conclusion is inescapable that custody was vested jointly in the city and the board. The final question is whether the trial court abused its discretion in awarding plaintiff only $98,908 which included some $18,908 for medical expenses.
After being seen and treated conservatively by other doctors plaintiff saw Dr. David Jarrott, a neurosurgeon, in April, 1981. She complained of lower back pain, left shoulder pain, and numbness and pain in her legs. In June a cervical and myelogram were performed but proved negative. However, subsequent discograms revealed that she had two ruptured cervical discs and a ruptured lumbar disc. She was subjected to two separate operations for removal of these discs and was left with continuing problems in the cervical spine. Where the cervical discs were removed fusions took place in plaintiff's cervical spine and an abnormal angulation was left at C4 to 5. Dr. Jarrott was of the opinion that a surgical rizotomy would probably be required to alleviate plaintiff's suffering, but that the problems she was encountering because of the abnormal angulation of the surgical fusion could not be corrected except by an extremely serious surgical procedure. He stated that the risk involved in such a procedure was not warranted by the extent of her discomfort. However, he testified that she would have to wear a cervical collar for the rest of her life and would be handicapped to perform the duties of a key punch operator or a typist.
Dr. Jarrott testified that plaintiff would incur $5800 for the additional surgical procedure he recommended. He also stated that plaintiff could not return to work at all until further recovery was accomplished. Plaintiff produced an actuary who testified that she had already incurred loss of wages to the time of the trial in March, 1982, of $18,651. The evidence showed that she might be able to function as a receptionist or as a computer operator but would not be able to seek this employment for some time following the trial. Furthermore, it seems likely that she will never be completely well and able to compete freely in the job market. Thus, she will certainly incur some additional loss of wages and her earning capacity will surely be diminished.
As for pain and suffering, this plaintiff who was but nineteen years of age at the time of the accident is entitled to a substantial recovery. She has already undergone years of suffering, been subjected to extensive medical treatment including several hospital stays and surgical procedures and still suffers pain and discomfort which requires her to wear a neck support for the rest of her life. She will probably have to undergo a rizotomy which is the permanent cutting of nerves in her body and will be left with a permanent angulation in her neck.
The trial court's award of $98,908 was all inclusive, not only of the $18,908 of medical expense, but also of the $5,800 for future medical expenses, the $18,651 of lost wages to trial time and of some considerable amount for lost wages and diminished earning capacity after trial. The difference was awarded for pain and suffering. We have concluded that this award is so low as to constitute an abuse of discretion.
*1068 Having done so we must now raise the award to the lowest point reasonably within the discretion afforded to the trial court in accordance with Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). We award plaintiff $43,359 for medical expenses past and future and wages lost to trial time. We also award her $6,641 for wages she will clearly lose by the time she is able to attempt work. For pain and suffering and loss of future wages as well as diminished earning capacity we award her $150,000. This seems to be a modest award considering, for example, Faciane v. Carter, 381 So.2d 1312 (La.App. 4th Cir.1980) where a plaintiff with similar injuries recovered $150,000 for pain and suffering and $50,000 for diminished earning capacity and loss of retirement benefits but is the most to which we can raise the award considering Coco.
Accordingly, the judgment in favor of plaintiff is affirmed but amended so that there is judgment in her favor and against the defendants, Sewerage and Water Board of New Orleans and the City of New Orleans, in the sum of $200,000 with legal interest from date of judicial demand until paid and for all costs of these proceedings. In all other respects the judgment appealed from is affirmed.
AMENDED AND AFFIRMED.