460 So.2d 1132 (1984)
E.J. WALKER, Individually and as Natural Tutor of Virginia Walker, Patrick Walker and Derick Walker, Plaintiffs-Appellants,
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, OFFICE OF HIGHWAYS, State of Louisiana, Defendant-Appellee.
No. 16641-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
Rehearing Denied January 4, 1985.
Writ Denied March 15, 1985.
*1134 Lunn, Irion, Switzer, Johnson & Salley by Jack E. Carlisle, Jr., Shreveport, for E.J. Walker, et al.
Wilkinson, Carmody & Gilliam by Arthur R. Carmody, Jr., Shreveport, for The St. Louis Southwestern R. Co.
John W. King, Baton Rouge, for La. Dept. of Transp. & Development.
Before HALL, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
In this wrongful death action against the Department of Transportation & Development, Office of Highways, State of Louisiana and the St. Louis Southwestern Railway Company, the plaintiff, E.J. Walker, individually and in his capacity as natural tutor of Virginia Walker, Derick Walker and Patrick Walker, appeals a judgment rejecting his demands. We affirm.
At about 5:30 a.m. January 1, 1979 Shelly Carr Walker, wife of E.J. Walker and mother of Virginia, Derick and Patrick, was killed when the south bound automobile in which she was a passenger collided with a large tree lying across both lanes of LA # 3 (Benton Road) in Bossier Parish. The vehicle was driven by decedent's brother, James Carr. He was taking the decedent to work. A severe and wide spread ice storm had commenced in northwest Louisiana on the night of December 31 and was still in progress at the time of the accident. The accident occurred about 30 minutes after the 70 year old cottonwood tree, which was located on the defendant railroad's right of way, uprooted and fell across the highway. Plaintiff's surveyor and the plat he prepared established the tree to be entirely on the railroad right of way before it fell and the railroad concedes the correctness of this determination. The tree was covered with a heavy accumulation of ice at the time it uprooted and fell across the highway.
The plaintiff sought to establish his cause of action against the defendants on the basis of strict liability by virtue of their custody and control of the tree and on the basis of their negligence for failing to remove the tree before and after it fell.
The case was tried simultaneously against the DOTD by the judge, as required by LSA-R.S. 13:5105, and against the railroad by a jury.
After the plaintiff rested the judge sustained a motion for dismissal filed by the DOTD pursuant to LSA-C.C.P. art. 1810(B).[1] The judge found the plaintiff failed to establish any basis for liability against DOTD. At the conclusion of the trial the jury made a finding in response to the first special interrogatory submitted to it that the accident was caused "in whole or *1135 in part by an Act of God."[2] Pursuant to this finding a verdict was entered in favor of the railroad.
The plaintiff assigns as error the jury finding that the accident was caused by an Act of God contending the evidence established the tree was diseased, rotten and defective which was a contributing cause to the uprooting of the tree and for these reasons the railroad was liable on the theory of strict liability and negligence.
The plaintiff also assigns as error the trial judge's dismissal of his action against the DOTD pursuant to the LSA-C.C.P. art. 1810(B) motion to dismiss.

LIABILITY OF THE DOTD
(A) Strict Liability
A claimant is entitled to establish liability pursuant to the strict liability provision of LSA-C.C. art. 2317[3] only if he can prove the following required elements:
1) that the "thing" which caused the injury was the "care, custody, and control" of the defendant;
2) that the "thing" was defective in that it posed a condition creating an unreasonable risk of harm; and
3) that the defective "thing" caused the injury complained of.
See Loescher v. Parr, 324 So.2d 441 (La. 1975); Jones v. City of Baton Rouge, etc., 388 So.2d 737 (La.1980); Toussant v. Guice, 414 So.2d 850 (La.App. 4th Cir. 1982).
The defect must be some flaw or fault existing in the thing itself. Brown v. Winn-Dixie Louisiana, Inc., 417 So.2d 44 (La.App. 1st Cir.1982), reversed on other grounds 452 So.2d 685. See also Toussant v. Guice, supra.
The plaintiff failed to establish the tree before it fell upon the highway was in the "care, custody and control" of the DOTD. The plaintiff established the tree before it fell was on the railroad right-of-way. Following the tree's fall upon the highway's surface it did not become a part of the highway. It was not a defect in the highway which was under control of the DOTD. The plaintiff did not establish his cause of action against the DOTD under the provisions of LSA-C.C. art. 2317.
(B) Negligence
The DOTD is not a guarantor of the safety of travelers, but it owes a duty to keep the highways and it's shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the DOTD is actually or constructively aware of a hazardous condition upon its highways and fails to take corrective action within a reasonable time. Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980).
The DOTD has the right to remove a tree located on private property adjacent to it's right-of-way when the tree poses imminent dangers to the users of the highways. Adams v. State, Dept. of Highways, 357 So.2d 1239 (La.App. 2d Cir.1978). The DOTD has a duty to remove a tree from property adjacent to its right-of-way when it has actual or constructive knowledge the tree is in a condition where it may fall upon the road and create imminent danger for the users of the road. Wilson v. State, Through Dept. of Highways, 364 So.2d 1313 (La.App. 3d Cir.1978).
The accident occurred within less than one hour after the tree fell across the highway *1136 early New Year's morning while a severe ice storm was in progress. There is no evidence that the DOTD had knowledge of the obstruction to the road before the accident. All available highway personnel had been called to work about 9:00 p.m. December 31st and were actively engaged throughout the night and the following day salting down frozen highways and bridges in an effort to protect the traveling public from the third worst ice storm in the five preceding years.
The case of Porta v. State, State Board, 242 So.2d 64 (La.App. 1st Cir.1970) involved an automobile accident which occurred when an automobile struck a tree lying on a highway in south Louisiana the day after Hurricane Betsy devastated the area. Plaintiff claimed the State Department of Highways was derelict in it's duty of removing the tree from the highway. The court rejected this contention citing the severity of the storm, the number of trees knocked down by the hurricane, the immensity of the clean-up job, as factors resulting in its conclusion. Failure to remove the tree one day after the storm did not constitute a breach of the department's duty.
The DOTD was under no duty to obtain actual or constructive knowledge of the tree across the highway which had fallen before daylight and remove the tree or otherwise warn against it within one hour from the time it fell.
During the presentation of the plaintiff's case there were numerous witnesses who testified they were familiar with this 70 year old cottonwood tree. These witnesses established it was a green tree which appeared healthy and from general observation showed no apparent signs of defect. The only evidence produced by the appellant to the contrary was the expert testimony of a forester who had never seen the tree.
Henry L. Bango, a consulting forester, testified on behalf of plaintiff as an expert witness as to the cause of the tree's fall. He stated he made a personal inspection of the tree stump on June 17, 1980over 18 months after the occurrence of the accident. Mr. Bango has a B.S. in forestry from L.S.U. and has worked in the field for over 40 years. However, he has no specialization in tree pathology and he testified his main area of expertise is managing timber lands for commercial timber production. He testified all he did was make an eyeball examination of the tree stump and that he conducted no laboratory tests to determine if any diseases afflicted the stump. He estimated that the tree was 65 to 70 years old, characterizing this as a "pretty good guess."
His examination led him to conclude the tree was rotten in the center of the stump and it's roots were afflicted with a fungal infection. He claimed the tree was suffering from "heart rot" or "butt rot." Mr. Bango also noted there was substantial fire damage at the base of the stump extending 18 inches up the west side of the stump. He contends the fire damage which occurred over the preceding 18 to 20 years caused root damage which was a contributing factor to the uprooting of the tree. A number of pictures of the tree stump taken at the time of Mr. Bango's inspection fail to clearly reveal this fire damage. Pictures of the tree were taken from almost every conceivable angle and it was brought out on cross-examination that there was no picture of the tree showing its west side which was the site of the alleged fire damage. Bango had never seen a fire at the site of the tree but he opined the fires could have been caused by friction between the steel wheels of trains rubbing against the steel tracks in the area adjacent to the tree. Mr. Bango stated these fires burned the cambium layer of cells immediately beneath the tree's bark, killing the tree, and setting off the process of fungal rot. The pictures offered with Mr. Bango's testimony do show a great deal of decay with respect to the center of the tree stump. There is a picture of Mr. Bango holding a stick against the stump and he testified the stick was in a hole at the base of the stump. However, Mr. Bango admitted freely on cross-examination that this rot could have occurred after January 1, 1979 *1137 due to rapid deterioration of the stump after its prolonged exposure to the elements. The picture of the stump taken on the date of the accident reflects very little evidence of any condition at the center of the stump which could be considered rot and show no evidence of any burn damage to the stump. Mr. Bango admitted on cross-examination that the ground level moisture, the ice accumulation and wind at least contributed to the tree's being uprooted at the time of the accident.
The plaintiffs, in an attempt to substantiate Mr. Bango's testimony, offered the testimony of several area residents, and supervisory personnel for both DOTD and the railroad. Some of these witnesses testified that fires were possible as a result of friction on the wheels of railroad cars, and some did indicate that fires had occurred in the vicinity of the tree over the past 20 years. However, none of them could ascertain with any accuracy as to the frequency or the exact occurrence of these fires. Bango admitted that upon casual examination of the stump it did not appear black or charred as it would appear had it recently burned.
DOTD is not required to make a minute examination of the base of every tree along it's right-of-way. The duty of DOTD is to observe and remove trees that are dead or leaning or otherwise appear defective by general observation. This tree did not break or fall from any defect that existed in the trunk of the stump which was examined by Bango. It uprooted. It would be an impossible task to carefully inspect every tree on property adjacent to the highway right-of-way to determine if there is a possibility of root deterioration that could result in a tree covered with ice uprooting and falling across the highway. We conclude that the appellant's evidence fails to establish the DOTD had either actual or constructive notice of a possible root defect in the Cottonwood tree that would cause it to uproot and fall upon the highway. This green cottonwood tree which grew for many years adjacent to the highway gave no indication to the highway employees who frequently inspected the area that it was in a condition where it might fall and create imminent danger to the users of the highway.
The plaintiff failed to establish by a preponderance of evidence a cause of action against the DOTD on the theory of negligence.
The trial judge properly granted the DOTD's motion to dismiss.

LIABILITY OF THE RAILROAD
(A) Strict Liability
The plaintiff contends the jury's finding that the tree fell because of an Act of God was not supported by the evidence and further complained that because of the Act of God interrogatory the jury never reached the issue of whether the tree was defective. We note the appellant made no objection to the form of the first special interrogatory and should not complain of it on appeal. However, we find it unnecessary to address this issue because under the circumstances we are mandated in the interest of judicial economy to evaluate the evidence submitted to the jury and decide the case in accordance with the evidence. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
The Act of God defense to strict liability is an affirmative defense which the railroad is required to establish by a preponderance of the evidence. Loescher v. Parr, supra; Robertson v. Parish of East Baton Rouge, 415 So.2d 365 (La.App. 1st Cir.1982). We find it unnecessary to determine whether the railroad established the affirmative defense that the tree fell solely because of an Act of God because the plaintiff failed to establish the tree was defective.
The tree was on the railroad right-of-way and for this reason it was in the custody of the railroad within the contemplation of C.C. 2317. Jones v. Sewerage & Water Bd. of New Orleans, 430 So.2d 1063 (La.App. 4th Cir.1983), Smith v. Chemical *1138 Construction Corporation, 215 So.2d 530 (La.App. 1st Cir.1968). The tree was a substantial contributing cause of the accident and the damage suffered by appellant. The plaintiff has established by a preponderance of the evidence the railroad had control of the thing which caused the harm but in order for him to seek the application of strict liability he must also establish the thing (tree) was defective and the defect caused the harm. See Toussant v. Guice, supra, where ownership of the thing from which the harm came was established but strict liability denied because of the failure to establish a defect in the thing.
The plaintiff's evidence contains the testimony of numerous witnesses who were familiar with the tree who stated the tree was green and healthy and not apparently defective. The railroad's evidence also contained the testimony of several witnesses who lived in the area of the accident who observed the tree on a daily basis all of whom stated the tree was green and healthy and showed no signs of being defective.
Mr. Bango, the appellant's expert, was the only witness who testified the tree was defective. Mr. Bango's testimony was also contradicted by the railroad's expert, Frederick F. Jewell, a professor of forestry at Louisiana Tech. Mr. Jewell has a Ph.D in plant pathology with a specialty in forest pathology. He is well versed in his field, the member of several professional organizations, and has done extensive research and work in the area of tree diseases. Dr. Jewell testified he inspected the stump in October, 1981, that he had listened to all the testimony in this case prior to his and had examined all of the pictures in evidence including those taken of the tree stump and roots on the day of the accident. Based on these facts he concluded that there was no root problem with the tree, there was no fire damage to the tree, that any rot which was inside the heart of the stump had occurred after the accident, and he concluded by stating that this healthy tree fell in an ice storm under the weight of a great deal of ice. He noted the absence of mushroom-like fungal growths on the roots of the tree stump as evidence of the fact that the roots were not diseased. Dr. Jewell also disclaimed Mr. Bango's theory that a tree could be killed by fire claiming that cottonwood trees have an ability like all living things to heal themselves by developing scar tissue over the areas damaged by fire in a relatively short period after such fires.
Jewell stated that you cannot determine root disease by examining the roots 18 months after they were removed from the ground. He stated the picture of the roots taken on the day of the accident do not indicate any root disease. He testified that root disease is first indicated at the top or crown of the tree where the leaves and limbs will die. All of the testimony from those familiar with the tree indicate the tree was fully green and none observed dead leaves and limbs on the crown of the tree. Jewell testified the picture of the roots indicate they had "excellent soil holding capacity." He expressed the opinion the accumulation of ice could cause a healthy tree to uproot. A witness who lived across the highway from the location of the cottonwood tree testified a healthy tree 8 inches in diameter fell upon his house and electric lines in the very early morning hours of January 1 during this ice storm. Another witness testified he saw an ice laden tree fall about a mile from the accident site about one hour after the accident. There were several reports of trees across the road received during the ice storm by the Bossier Parish Headquarters of the DOTD.
Our review of the totality of the evidence establishes that the testimony of appellant's expert when evaluated against all the contrary evidence in the record does not establish by a preponderance of evidence that the cottonwood tree was defective and for that reason strict liability is not applicable.
(B) Negligence
The railroad established adequate and frequent inspection of its right-of-way *1139 and that those inspections did not reveal the tree was defective. We have found the appellant failed to establish the tree was defective. The railroad is not required to remove non defective trees from its right-of-way. The railroad breeched no duty to the users of the highway.
Judgment affirmed at appellant's cost.
NOTES
[1] This provision is now contained in LSA-C.C.P. art. 1672(B).

B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
[2] RESPONSIVE VERDICTS

1. Was the harm caused to the plaintiffs as a result of this accident caused in whole or in part by an Act of God?
YES X NO___
If your answer is yes, then you will return a verdict for the defendant railway company and not concern yourself with the balance of these interrogatories; but if your answer is no, then you should go on to question # 2.
[3] Art. 2317. Acts of others and of things in custody

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.