ELLIS, Judge:
This is a quantum case, in which plaintiff David Bickford is asking for an increase in the general damage award of $45,000.00 made in the trial court.
Plaintiff was injured in a motorcycle accident on August 1,1978. He suffered severe fractures of the right knee and ankle, and of the second toe of his right foot, as well as a lacerated Achilles tendon on his right foot and a severe laceration of the right foot.
His fractures were surgically reduced and repaired with internal fixation, and his lacerations cleaned and sutured at Willis-Knighton Memorial Hospital in Shreveport. Six days later, with his wounds healing well, he was placed in a hip cast, and on August 10, 1978, was discharged to the care of his family orthopedist, Dr. Luis Matta. When plaintiff left the hospital, he was walking with the aid of crutches.
*406 He was treated by Dr. Matta, who removed the cast on September 7, 1978, and started plaintiff on a regimen of physical therapy. In the ensuing months plaintiff improved steadily. In April, 1979, Dr. Mat-ta hospitalized plaintiff and operated on his right knee to free up a number of adhesions and improve the motion, and to repair a hole in the joint capsule.
By May, 1979, plaintiff was sufficiently improved to be discharged from Dr. Matta’s care, subject to a return for evaluation. On March 3, 1980, Dr. Matta saw plaintiff for the last time.
At that time, x-rays showed the fractures were all well healed and well aligned. Plaintiff had good extension and flexion of his knee, with some mild ligamentous instability, which Dr. Matta felt would cause no problem. There was a ten-degree loss in dorsiflexion in the ankle, and no significant findings relative to the second toe.
Plaintiff had marked severe crepitation in the right patellar femoral articulation, which Dr. Matta felt resulted from chondro-malacia or from traumatic arthritis. Dr. Matta was of the opinion that plaintiff would require surgery to repair or remove his right patella within three years.
Dr. Matta assigned a permanent partial disability rating of about 40% to plaintiff’s right leg. He was of the opinion that plaintiff should not engage in activities which would involve squatting, climbing and going up and down stairs, because of the patellar problem. Otherwise, he felt plaintiff could do anything he wanted.
Dr. Herbert K. Plauche, an orthopedic surgeon, saw plaintiff on one occasion for evaluation. His physical findings were the same as those of Dr. Matta. He testified that plaintiff probably could never engage in activities which involved a significant amount of heavy lifting, stooping, squatting, or climbing without a significant degree of difficulty. He also thought plaintiff would need knee surgery in the future, and assigned a disability rating to the leg of 35 to 45 per cent.
Plaintiff was 16 years of age when he was injured. He had been a member of his high school track team, an activity which he had to give up because of his injuries. He testified that he underwent a severe degree of pain while under treatment for his injuries, and that he was greatly distressed by his disability. He testified that he had given up hunting, dancing and roller skating because of the injury.
He finished high school with his class in May, 1979, and went to work as a rodman with a surveying party. He testified that he had some knee trouble when he had to squat to do measurements, and that his knee and ankle would bother him as the day wore on. For one semester, he attended college, where he was a member of the marching band. He testified that he was not permitted to march, however, because of his leg injury. After he left college, he returned to work on a surveying crew, and continued to have the same problems. However, he testified that he was able to do his job.
He next got a job in a warehouse, where he was required to unload freight, store it, tag it, and sometimes climb up on stacks of boxes. He was able to do this job without difficulty, although he complained of some pain after working long hours.
His next job required him to clean the ends of oilfield pipe, and roll the segments of pipe around. He stated that the segments weighed 400 to 500 pounds each. Plaintiff’s next job was as a rodman, doing construction surveying. He was required to work ten hours per day, four days per week. His job involved climbing ladders, while carrying a sack of tools weighing 65 or 70 pounds, and squatting. Plaintiff testified that it was not an easy job, but that he was able to do the work without problem. He further testified that both of his legs bothered him after a day’s work, but that his right leg bothered him more. At the time of the trial, plaintiff had been working at this job for about nine months.
In this court, plaintiff claims that the $45,000.00 award for past and future pain and suffering and future medical expense?-! *407 is inadequate, and complains of the failure of the trial judge to make an award for mental anguish and future loss of earnings and disability.
Plaintiff has offered no evidence as to loss of earning capacity, so that any award for that element of damages would be entirely speculative. After reading the oral reasons for judgment rendered by the trial judge, we find that mental anguish was considered by him in fixing the award, although he did not specifically so state.
As to the amount of the award for general damages, we find it to be low, but not so low as to constitute an abuse of the discretion of the trial judge. The trial judge was of the opinion that plaintiff was able to do his various jobs without too much difficulty, and apparently did not find the pain in which plaintiff worked was of such a nature or severity as to impair his capacity. There is substantial evidence in the record to support this conclusion of fact, and we cannot say it is manifestly erroneous or clearly wrong. See Reck v. Stevens, 373 So.2d 498 (La.1979).
The judgment appealed from is affirmed. Costs of this appeal shall be paid by plaintiff.
AFFIRMED.