427 So.2d 1146 (1983)
Andrea ENTREVIA
v.
A.E. HOOD, Jr.
No. 82-C-1437.
Supreme Court of Louisiana.
February 23, 1983.
Rehearing Denied March 25, 1983.
*1147 Joseph H. Simpson, Amite, for applicant.
Douglas T. Curet, Curet & Curet, New Orleans, for respondent.
DENNIS, Justice.
The question presented in this case is whether the owner of a remote, unoccupied farm house, which was surrounded by a fence and posted with "no trespassing" signs, is strictly liable for damages occasioned when a trespasser was injured by the collapse of the building's rear steps. The court of appeal held that the owner was responsible, reversing the trial court's judgment for the owner. We reverse and reinstate the trial court's judgment. Under the circumstances of this case, in light of all relevant moral, economic and social considerations, the defective steps did not pose an unreasonable risk of harm to others.
The building involved in this case was a vacant house located on a remote piece of rural property surrounded by a fence posted with "no trespassing" signs. The plaintiff, Andrea Entrevia, and her friend, Loretta Dixon, entered the premises to peer through the windows of the building. Entrevia was seriously injured when the rear steps to the house collapsed as she descended.
After listening to the conflicting testimony of the witnesses, the trial court found that Entrevia and her friend had gone upon the property without the knowledge or consent of its owner. The defendant owner, A.E. Hood, Jr., and his tenant who resided across the road from the house in question testified that they had neither rented the property nor given Dixon permission to use it. Dixon testified that she had spoken to Hood's tenant about the house and intended to rent it. The trial court stated that it did not believe her testimony. The surrounding circumstances corroborate the trial court's findings. Dixon's husband, a convicted robber and burglar, was a Tangipahoa Parish Jail prisoner, but he was permitted to leave the prison during the day on work release. On a previous occasion, Dixon and her husband had entered the house without a key for an unauthorized conjugal visit. On the day of the accident, Dixon did not have a key to the house and made no effort to obtain one. The house had no electricity, had not been prepared for tenants, and had been used for storing hay.
Based on these findings of fact, the trial court further determined that there had been no unreasonable risk of harm to Entrevia posed "by steps to a porch of a house sitting off the road, enclosed by a fence with a closed gate and with `no trespassing' signs, wherein it is assumed by law that all people will respect the privacy of another's property." Accordingly, the trial court rendered judgment for the defendant, rejecting the plaintiff's demands.
On appeal, the court of appeal reversed and awarded damages to the plaintiff, holding that it was sufficient for recovery under civil code articles 2317 and 2322 that the plaintiff had proved that the defendant's defective steps had caused plaintiff's injuries, because the defendant had failed to prove any affirmative defense. 413 So.2d 954. We granted writs because the holding of the court of appeal appeared to conflict with our previous interpretations of civil code articles 2317 and 2322.
Civil code article 2317 provides: "We are responsible, not only for the damage occasioned by our own act, but for whom we are answerable, or of things which we have in our custody. This, however, is to be understood with the following modifications."[1]
*1148 Article 2322, which further defines the application of Article 2317's general principle to the owner of a building, provides: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
This court has recognized that the same principle of legal fault underlies both Article 2317 and 2322 (as well as Articles 2318, 2319, 2320 and 2321). In Loescher v. Parr, 324 So.2d 441, 446-47 (1976), we summarized this principle recognized in favor of an injured person himself without fault:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
This jurisprudence recognized that the injured person must prove the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.
The legal fault thus arising from our code provisions has sometimes been referred to as strict liability.
And in Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1979), this court reaffirmed that under Article 2322 the owner of a building has a non-delegable duty to keep his building and its appurtenances in repair so as to avoid unreasonable risk of injury to others. Id. at 1292.
Accordingly, in order to recover in strict liability under Article 2317 or 2322 against the owner of a building, the injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others, and that his damage occurred through this risk. Upon proof of these elements, the owner is responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. The owner is absolved from his strict liability neither by his ignorance of the condition of the building, nor by circumstances that the defect could not easily be detected. Olsen v. Shell Oil Co., supra; Loescher v. Parr, supra.
*1149 Consequently, it was clear error for the court of appeal to reverse the trial court judgment and award damages merely because the plaintiff had proved she sustained injuries caused by the collapse of the steps. It was incumbent upon her to prove that her injuries were caused by a quality of the building that posed an unreasonable risk of harm to persons. The trial judge recognized the correct legal principle and concluded that the defendant's building did not constitute an unreasonable hazard of injury to others. We will proceed, therefore, to determine whether his application of the precept was warranted by the evidence.
The requirement that an injured person in order to recover under Article 2317 or 2322 must prove that the risk from which his damage resulted posed an unreasonable risk of harm places a limitation on a building owner's strict liability. He cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others.
The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Articles 2317 and 2322 state general precepts and not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility. Geny, Method of Interpretation and Sources of Private Positive Law § 174 (Louisiana State Law Institute trans. 2d ed. 1963). To recognize the necessity for this process and to give directions for the judge's consideration of the facts and their relation to the ideals of justice and social utility, this court has said that the owner of a building which presents an unreasonable risk of harm to others shall be responsible to a person injured by realization of that risk unless the victim's damage was caused by the fault of the victim, the fault of a third person, or an irresistible force. These conceptions only provide approaches to the decision of concrete cases, however, and the interpreter must be wary of the illusion that he can find a ready solution in their revelations. Except in the clearest of cases, it is necessary for the judge, in shaping his decision about how the law applies to the facts, to consider the particular situation from the same standpoint as would a legislator regulating the matter. Geny, supra, § 173; Cf. Id. at §§ 175, 183. Although the judge, unlike the legislator, is constrained by the concrete problem before him and the ambit of his limited authority, he nevertheless must consider the moral, social and economic values as well as the ideal of justice in reaching an intelligent and responsible decision. See Geny, supra, §§ 173-174; Cf. Id. at § 170. See also Dixon, Judicial Method in Interpretation of Law in Louisiana, 42 La.L.Rev. 1661, 1678 (1983); J. Cueto-Rua, Judicial Method of Interpretation of the Law 277 (1981). As this court has noted in relation to other forms of strict liability under the civil code, the activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations. Langlois v. Allied Chemical Corporation, 258 La. 1067, 1084, 249 So.2d 133, 140 (1971).
The judicial process involved in deciding whether a risk is unreasonable under Article 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, Hunt v. City Stores Inc., 387 So.2d 585 (La.1980), and in deciding the scope of duty or legal cause under the duty risk analysis. Hill v. Lundin Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Green, The Causal Relation Issue, 60 Mich.L.Rev. 543, 563 (1962). This is not because strict liability under Article 2317 is equivalent to liability for negligence, but because in both delictual areas the judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social and economic considerations, *1150 in the same way that the legislator finds the standards or patterns of utility and morals in the life of the community. B. Cardozo, The Nature of the Judicial Process, at p. 105 (1921); See also, Green, The Causal Relation Issue, 60 Mich.L.Rev. 543 (1962).
Because of the similarities in these aspects of the negligence and strict liability inquiries, it has been suggested that a useful approach in a case under article 2317 might be to ask the following: If the custodian of the thing is presumed to have knowledge of its condition before plaintiff's injury, would he then have been acting reasonably by maintaining it and exposing others to it? See Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982) (Lemmon, J.); Id. at 501 (Dennis, J. concurring); Cf. Wade, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825, 834-35 (1973); Wade, Strict Tort Liability for Manufacturers, 19 S.W.L.J. 5, 15 (1965). This was perceived as a helpful, although indirect way to show judges familiar with weighing considerations of social utility in negligence cases that the policy consideration part of the judicial process should not be different in cases under article 2317. However, the suggested method is indirect and entirely unnecessary once the judge understands that the standards or patterns of utility and morality which he must consider in deciding if a risk is unreasonable will be found in the life of the community, in the same way that they will be found by the legislator. By no means was the suggestion intended to imply that the methods of determining negligence and strict liability under article 2317 are identical in all respects. There is a major distinction between the two theories of recovery which lies in the fact that the inability of a defendant to know or prevent the risk is not a defense in a strict liability case but precludes a finding of negligence. Hunt v. City Stores, Inc., supra; Olsen v. Shell Oil Co., supra; Loescher v. Parr, supra.
In the present case, the trial court found that the imperfections existing in the steps that collapsed and injured the plaintiff did not constitute an unreasonable risk of harm to others. Under the circumstances of the case as reflected by the evidence of record, we agree with his judgment.
The trial court found that the plaintiff entered the premises unlawfully as a trespasser. Although the wholesale immunities from civil responsibility resulting from the common law classification of a person as a trespasser are not recognized by our law, Cates v. Beauregard Electric Inc., 328 So.2d 367 (La.1978), a knowingly unauthorized entry of another's fenced and posted immovable property is legally and morally reprehensible conduct. La.R.S. 14:63. An owner of property has valid economic and privacy interests which our law seeks to protect from intruders such as the plaintiff.
The building in question was isolated, unproductive, rural property. Owners of such property having little current worth or utility typically are in a poor position to absorb the costs of premises risks and to redistribute them among the community. Laws or rules which tend to impose a burden requiring either the total destruction or high level restoration of obsolescing farm buildings does not seem socially or economically desirable.
The steps which collapsed were located in the rear of the fenced and posted property, and the property itself was remotely located on a country road. The evidence does not suggest that the property posed any dangers other than those typically associated with a somewhat rundown old farm house. These facts indicate that the magnitude of the risk posed and the gravity of the harm threatened were small in comparison with that of other risks presented by things in our society.
Accordingly, for the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated.
REVERSED. TRIAL COURT JUDGMENT REINSTATED.
MARCUS and BLANCHE, JJ., concur.
*1151 WATSON, J., concurs in the result for reasons assigned.
LEMMON, J., subscribes to the decision and assigns additional concurring reasons.
WATSON, Justice, concurring in the result.
Clearly, the building was a "ruin". As such, it had little utility and it was likely that children, tramps or others straying on the premises might be injured. The owner could not reasonably be required to destroy or restore his rural ruin.[1] Faced with the owner's reasonableness and an unsympathetic plaintiff, the majority solves the dilemma by finding no unreasonable risk of injury. This conclusion is questionable. If a small child were the "trespasser", would not an unreasonable risk of harm be found? However, the majority reaches a correct result. Plaintiff was at fault. Ignoring the fence and sign, she elected to enter an obviously unsafe structure and to walk on some dilapidated steps. Photographs of the steps show many holes, damage which could not have been caused solely by plaintiff's accident and must have preexisted. Plaintiff assumed the risk of her injury and is barred from recovery by her victim fault.
I respectfully concur.
LEMMON, Justice, subscribes to the decision and assigns additional concurring reasons.
This decision reinforces the concept that the judicial determination of strict liability under Article 2317 does not end with the conclusion that the thing in defendant's custody caused the injury, but further requires a weighing process.[1]
Defendant's relationship with and responsibility for the house imposed upon him an absolute duty to discover and to remedy any unreasonable risks of harm. Because of the duty to discover, the owner is presumed to have known of the risks, and any contention that he did not know the condition of the steps would not avail him as a defense to the strict liability imposed by law. However, this does not end the inquiry, and there must be further consideration of the duty to remedy the defects in the light of that presumed knowledge. Determination of the issue concerning the duty to remedy involves the question of whether the owner failed to prevent the particular risk from resulting in harm to this particular plaintiff under these particular circumstances.[2]
Here, the evidence, viewed in the light most favorable to the prevailing party in the trial court, established that the isolated house on private property in a rural area was surrounded by a fence and that a "no trespassing" sign was posted in the area. Defendant made no efforts to rent the house, personally or through an agent, and there was nothing to suggest to plaintiff that she was free to enter upon the private property to inspect the house. These circumstances are to be weighed against the circumstances that the fence and the house were not locked and the house did not contain a sign prohibiting entry.
When these and other pertinent facts and circumstances are weighed, one could reasonably conclude (as did the trial judge in this case) that the defendant took sufficient reasonable steps to prevent the (presumably) known risk of harm from causing an injury to this plaintiff.
NOTES
[1] The "modifications" are set forth in Articles 2318-24. Thus, parents are answerable for the damage occasioned by their minor unemancipated children. Article 2318. Curators are responsible for the damage occasioned by insane persons under their care. Article 2319. An employer is answerable for the damage occasioned by his servants "in the exercise of the functions in which employed." Article 2320. The owner of an animal may be held answerable for the damage it causes. Article 2321. The owner of a building is responsible for the damage caused "by its ruin." Article 2322. The damage amount can at times be reduced according to the circumstances, such as imprudence on the part of the victim. Article 2323 (as in effect on the date of the instant accident). See also, new Article 2323 (Amended Act 431, § 1, 1979) which provides for the application of comparative negligence as a "modification" of Article 2317. Under Article 2324, persons whose concurring fault has caused injury are liable in solido and the person who encourages another person to commit a wrongful act is answerable in solido with the actor for the damage caused by the act.
[1] See the discussion pointing out the error of accepting "reasonable care" as a defense to strict liability by Professor William E. Crawford at 43 La.L.Rev. 607.
[1] Similarly, the judicial determination of liability based on negligence also involves a weighing process, although the factors to be considered are not necessarily the same.
[2] The foregoing approach is simply another method of considering and weighing all relevant factors to determine whether the thing in custody presented an unreasonable risk of harm under the particular circumstances. Of course, this approach has long been used as a method of determining strict liability in products liability cases.