SHORTESS, Judge.
On October 11, 1981, Cecil J. Bizette’s (plaintiff) minor daughter Deanna (age 9) was playing with a friend, Kristi McGowan, in the neighborhood where they lived in Baton Rouge. Jack F. Hall (defendant) was a neighbor of the Bizettes. Hall’s back yard was completely surrounded by a *198 four-foot hurricane fence on one side and along the back and a six-foot wooden fence along the other side. The wooden fence was connected to the house by a short section of hurricane fence and a gate. The gate was normally kept padlocked and on this day was so locked. There were a number of large trees in defendant’s back yard. One tree had nailed to it a number of two-by-four wooden lengths which formed a ladder leading up into the tree. Defendant testified that these boards were nailed to the tree to enable him to climb the tree to prune limbs that might fall across the service drop from a nearby utility pole to his house.
Deanna and Kristi had decided to climb a bush in another neighbor’s back yard. Upon seeing the rungs on the tree in defendant’s yard, Kristi suggested that they climb that tree, and Deanna readily agreed. The two girls climbed defendant’s hurricane fence and entered his yard.
When installing the rungs, defendant had placed the bottom rung high enough to prevent a person from climbing without first using a ladder to reach the bottom rung. In fact, he stated that he had to use a ladder to reach the bottom rung, and “I had them up high enough [so] you couldn’t have pulled yourself up on one and reached the other.” Confronted with this situation, the two girls decided that Kristi, the taller of the two, would hoist Deanna up to the bottom rung. As Deanna continued to climb, she reached the top rung which gave way under her weight. Deanna fell to the ground and sustained a fracture of her left femur. Plaintiff brought this suit for her damages. A jury trial was held. The jury answered the pertinent interrogatories propounded them as follows:
“1. Was Mr. Jack F. Hall custodian of a defective thing? Yes _x_ No _
2. Did the defective thing create an unreasonable risk of harm? Yes _ No _x_
3. Were Deanna Bizette’s injuries caused by the defective thing? Yes _x_ No _

The trial court rendered judgment dismissing the case on the basis of the answers to the interrogatories. Plaintiff has appealed, assigning as error the findings that the defective rung did not create an unreasonable risk of harm and that the injured child assumed the risk of her injuries.
In Entrevia v. Hood, 427 So.2d 1146 (La.1983), our Supreme Court considered the question of the liability of a property owner for damage occasioned by another due to some defect found on the property owner’s premises. Where the injured person can prove that the risk from which his damage resulted was caused by a defect in a thing of which the defendant had the custody or control under La. C.C. art. 2317, the custodian will be deemed strictly liable for those damages if he can show that that risk was an unreasonable one. The court emphasized that the defendant “cannot be held responsible for all injuries resulting from any risk posed by his [defective item], only those caused by an unreasonable risk of harm to others.” (Emphasis added.) Entrevia, 427 So.2d at 1149. The court further noted that since Article 2317 contains a “general precept,” it did not form a simple rule of law amenable to mechanical application but required the interpreter to decide which risks are encompassed by the Codal obligations “from the standpoint of justice and social utility.” It went so far as to suggest that the judge in applying the law to the facts of a given case should “consider the particular situation from the same standpoint as would a legislator regulating the matter .... [He] must consider the moral, social and economic values as well as the ideal of justice in reaching an intelligent and responsible decision.” Its final observation regarding this quasi-legislative role to be played by the judge, borrowed from its earlier decision in Langlois v. Allied Chemical Corporation,[1] was that *199 liability without negligence is to be determined
after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations.
In order to aid the judge in his task, the Entrevia court suggested that a “useful approach” in deciding an Article 2317/strict liability case may be to ask whether the custodian of a thing, with his presumed knowledge of its condition, would have been acting reasonably by maintaining it and exposing it to others. However, that inquiry was deemed “indirect and entirely unnecessary” once the judge understood that “the standards or patterns of utility and morality which [the judge] must consider in deciding if a risk is unreasonable will be found in the life of the community.” Entrevia, 427 So.2d at 1150.
We now turn to the jury verdict and interrogatories upon which judgment was based. The first one, finding the defendant to be the custodian of a defective thing, is clearly supported by the record. The tree was in defendant’s back yard; the defective thing was the top rung which came off and caused Deanna’s fall and injury. There was some dispute as to whether the wood had rotted in the rung or not. Defendant testified that it had not rotted but that the nails holding it up had rusted and weakened, allowing the rung to slip off over the heads of the nails. Regardless of the reason for the failure of the rung, the fact that it did fall under the weight of a 8-year-old girl shows that it was defective. The third interrogatory found that the defective thing was the cause of Deanna’s injuries. Clearly, it was a cause of her injuries; but for the failure of the rung, she probably would not have fallen from the tree.
The jury answered, “No” to the second interrogatory: “Did the defective thing create an unreasonable risk of harm?” It is illuminating, when examining this interrogatory and response, to consider the charge given the jury by the trial judge. To educate the jury as to the proper considerations in determining the unreasonableness of a risk, the court followed the admonishment in Entrevia closely:
Now, this unreasonable risk [of] harm criteria is not a simple rule of law which can be applied mechanically in each case. In trying to ascertain whether or not something posed an unreasonable risk of harm, the law provides that [t]his concept envisions the use of or the consideration of moral, social and economical values, as well as the idea of justice. All these will be considered in reaching an intelligent and responsible decision.
Of course, in considering whether or not something posed an unreasonable risk of harm you should consider all the facts in the case: the thing, the location, the likelihood of use. All of the facts should be considered in determining whether or not there was an unreasonable risk of injury.
Keeping in mind that this court is to seek standards and patterns of utility and morality in ttye “life of the community,” we find the jury’s finding of “No” to the question of unreasonable danger highly persuasive. What better counsel could this court have in assessing community standards of utility and morality in its limited role as legislator (see Entrevia) than the verdict reached by the jury, “twelve good men, and true”? Peers of the parties have concluded that the evidence did not support the unreasonableness of the danger presented, and we are unable to find them clearly in error.
Moreover, applicable jurisprudence since Entrevia confirms the wisdom of this jury’s findings. The Supreme Court in Guillot v. Fisherman’s Paradise, Inc., 437 So.2d 840 (La.1983), granted recovery to the parents for the wrongful death of their child who drowned in a sewerage oxidation pond. In determining that the pond created an unreasonable risk of danger, the court noted that the risk could have been “easily eliminated by the installation of a fence or other enclosure sufficient to keep children out/’ Guillot, 437 So.2d at 844. This court, in McGee v. McClure, 442 So.2d *200 625 (La.App. 1st Cir.1983), writs denied, 444 So.2d 1225 (La.1984), refused to find an unreasonable risk of harm where a child drowned in a rural waterfowl breeding pond. Although the pond had been fenced, the gate had been left open for a short time, allowing the child to wander in. In the instant case, we note that although the accident occurred in an urban, well-populated area, defendant’s yard was enclosed by a fence and a locked gate. Additionally, the lowest rung of the make-shift ladder was placed at a height which required defendant to use a regular ladder to assist him in mounting its lowest rung. Deanna’s willful, determined action in concert with Kristi resulted in her reaching the top rung of the ladder — a place she knew she should not have been.
The testimony which the jury considered showed that these girls had been recently warned about the dangers connected with tree climbing and that they knew they would have been denied permission to climb defendant’s tree had they asked. The jury found her action “assumption of the risk.”[2] We decline to go that far, but we are certainly reminded of the Entrevia trespasser and the inquisitive child in McGee.
For the foregoing reasons, the judgment of the trial court dismissing plaintiff’s suit is affirmed. Costs of this appeal are taxed to plaintiff.
AFFIRMED.

. 258 La. 1067, 1084, 249 So.2d 133, 140 (1971).

. Interrogatory No. 5: "Did Deanna Bizette as- Yes x No sume the risk of the injuries she sustained?