460 So.2d 1104 (1984)
David P. McCART, Plaintiff-Appellant,
v.
SEARS, ROEBUCK AND COMPANY, Defendant-Appellee.
No. 16518-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
Writ Denied February 4, 1985.
Joseph W. Greenwald, Shreveport, for plaintiff-appellant.
Wilkinson, Carmody & Gilliam by Jerald N. Jones, Shreveport, for defendant-appellee.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
Plaintiff appeals the rejection of his demand for damages against Sears, lessee of the building where plaintiff fell through a suspended ceiling and sustained serious injury. We affirm.
In the spring of 1982, Sears, Roebuck and Co. began moving from its location in the Heart O' Bossier Shopping Center to its new store in Pierre Bossier Mall. Toward this end, Sears contracted with Randy McCoy to collect and prepare to auction equipment, fixtures and unmerchantable inventory at the old location. Plaintiff, a friend of Mr. McCoy's, volunteered to help him with the task. At Mr. McCoy's direction, McCart sought to retrieve a Christmas ornament hanging from the rafters of the ceiling of the main building and partially over an enclosed room which had a suspended ceiling. In order to reach the ornament, plaintiff crawled along a "catwalk" *1105 or shelf and then onto the suspended ceiling which gave way to his weight. In the fall, plaintiff sustained a broken wrist and a compression fracture to a lumbar vertebrae.
David McCart filed suit on December 2, 1982 against Sears, Roebuck and Co. for his injuries. He sought recovery under both negligence and strict liability theories. Sears answered the suit and filed a third party demand for indemnity in the event it was found liable for the injuries sustained by plaintiff, naming Randy McCoy, Coy Pettigrew, Randy McCoy Auction Service, and their insurers as third party defendants.
The trial court rejected plaintiff's claims, reasoning that Sears had no duty toward plaintiff and that no unreasonable risk of harm existed, thus barring recovery under both the negligence and strict liability theories.
It is now axiomatic that in order to recover under a strict liability theory, grounded in LSA-C.C. Art. 2317, the injured plaintiff must show that a defective aspect of the thing in defendant's custody posed an unreasonable risk of injury to others, and that his damage occurred through this risk. Loescher v. Parr, 324 So.2d 441 (La.1975).
Plaintiff contends that the false ceiling as constructed, from his vantage point for retrieval of the ornament, presented a similar appearance to a concrete ceiling the plaintiff had previously traversed in the automotive section. He argues that this circumstance presented a defect posing an unreasonable risk of harm. The standard for assessment of an unreasonable risk of harm was recently clarified and clearly enunciated in Entrevia v. Hood, 427 So.2d 1146 (La.1983).
In Entrevia, the Supreme Court explained:
The judicial process involved in deciding whether a risk is unreasonable under Article 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980), and in deciding the scope of duty or legal cause under the duty/risk analysis. Hill v. Lundin Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Green, the Causal Relation Issue, 60 Mich.L.Rev. 543, 563 (1962). This is not because strict liability under Article 2317 is equivalent to liability for negligence, but because in both delictual areas the judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social and economic considerations, in the same way that the legislator finds the standards or patterns of utility and morals in the life of the community. B. Cardozo, The Nature of the Judicial Process, at p. 105 (1921); See also, Green, The Causal Relation Issue, 60 Mich.L.Rev. 543 (1962).
Assuming arguendo the correctness of plaintiff's argument that the ceiling posed a risk, our analysis, as directed by Entrevia, leads us to conclude that the trial court correctly found that the ceiling created no unreasonable risk of harm. The ceiling through which plaintiff fell was a conventional and widely-used suspension type ceiling, with two-feet by three-feet rectangular acoustical tiles placed between metal runners. The ceiling was suspended by visible wires which hung from the main rafters of the building. The ceiling, which was approximately eight feet high, was inaccessible except by ladder. Here plaintiff not only used a ladder, but crawled on his hands and knees across a catwalk in order to traverse the ceiling. The probability of a person gaining access to and walking across this ceiling under these circumstances was miniscule. Thomas Hinton, the Sears employee in charge of the store's display department, testified that in years past, he had put the ornament up before Christmas and taken it down when the holiday season was over. He stated that he performed this task each year using a ladder, and that he never found it necessary to walk across the suspended ceiling of the substructure to remove the ornament.
*1106 In short, the risk presented by this ceiling would be the same as that normally associated with other suspended ceilings. Against this risk must be weighed the utility of the thing. The economic advantage of such a ceiling in terms of insulation benefits are obvious. Equally obvious is the ceiling's functional as well as aesthetic contribution to the substructure. Considering these factors, the likelihood and gravity of the harm is outweighed by the utility of the thing and the burden of eliminating the risk. A custodian of a thing cannot be held responsible for all risks posed by the thing under his control, but only those risks creating an unreasonable risk of harm to others. We specifically hold that the ceiling in question posed no unreasonable risk of harm. Plaintiff's claims founded upon negligence and strict liability based on Sears' custody of the building were properly rejected.
Plaintiff cites with reliance Fonseca v. Marlin Marina Corp., 410 So.2d 674 (La. 1981). That decision, which predates the Entrevia balancing analysis, focused on the latent dangerous condition or defect of the thing. There, the court found that the owner of a barn was held to be liable to a construction worker who fell from an unnailed scaffolding built by the owner when one of the boards, which was unsupported by joists, see-sawed. The court concluded that the boards gave the appearance of solid support; consequently, the scaffold created a latent defect in the building. This case is clearly distinguishable. There the owner built the scaffold for the purpose of aiding construction on the barn's upper portion, such as the roof. When analyzed in the manner espoused by Entrevia, a balancing of the risks posed by such a scaffold against its utility clearly indicate that the owner and custodian should be liable for injuries caused by the enormity of that risk. In this case, the ceiling was not installed to support a workman but was only for esthetic and insulation purposes. Any risk posed by such a ceiling was clearly outweighed by its utility.
For these reasons, we affirm the judgment of the trial court at appellant's cost.
AFFIRMED.