LOBRANO, Judge.
This matter comes before us on remand from the Supreme Court to consider those issues which were pretermitted in our original opinion. Landry v. State of Louisiana, 477 So.2d 672 (La.1985). For continuity and clarity we repeat the facts as set forth in our original opinion.
Keith Patrick Landry (Landry) brought suit against the Board of Commissioners of the Orleans Levee District (Levee Board) for damages as a result of injuries he sustained when after ascending the Lake Pon-chartrain seawall, he lost his balance and fell while trying to avoid stepping into a partially hidden hole adjacent to said seawall. The trial court found the Levee Board to be strictly liable, but reduced the amount of the award by two-thirds, attributing that amount of fault to Landry.
The evidence shows that on April 4,1982, Landry went to the Lake Pontchartrain seawall between West End and Canal Boulevard to go crabbing. This area is owned and maintained by the Levee Board. He parked his car on the lake side of Lake-shore Drive, walked across a grassy area to the seawall and proceeded to set his nets. After about an hour and a half, he retrieved the nets, placed them on top of a basket and ascended the seawall to return to his car. As he reached the “cap” or top of the seawall,[1] he noticed a rather large hole adjacent to the seawall that was partially obscured by weeds and other debris. In an attempt to avoid the hole he lost his balance and fell injuring his knee.
In his reasons for judgment, the Trial Judge stated, in pertinent part:
“The Levee Board is strictly liable for the defect which caused plaintiff to injure his knee. The lakefront of New Orleans is a recreational area, with parking bays and benches inviting visitors to use it. The presence of the hole presented an unreasonable risk of harm to people in plaintiffs position.”
The Levee Board argues that the trial court misapplied the doctrine of strict liability under Article 2317, as interpreted in Loescher v. Parr, 324 So.2d 441 (La.1975). Specifically, they contend first, that the presence of the hole did not cause Landry’s injury because he did not actually step into it, and second the hole did not present an unreasonable risk of harm, citing Entrevia v. Hood, 427 So.2d 1146 (La.1983) and Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980).
We reject the Levee Board’s first contention by relying on the evidence, and factual conclusions of the trial judge. There is no manifest error in the conclusion that there was a hole adjacent to the seawall, and that Landry, in attempting to avoid it was injured. The Levee Board’s argument in this regard is really one of causation. Clearly, “but for” the presence of the partially hidden hole, Landry would not have been injured.
*164 However, we do find merit in the Levee Board’s argument that the trial court erred in failing to weigh the risk of harm against the social utility of the area and the cost of prevention. The basis of this argument is that the conditions which gave rise to the creation of the hole were normal consequence of the wave action and erosion found in Lake Ponchartrain, and that an extreme burden would be placed on the Levee Board in preventing the occurrence of such holes. Such a burden would require, among other things, the hiring of additional personnel to inspect the lakefront area every day before it could be opened to the public.
The evidence substantiates this argument. Earl Magner, chief engineer for the Levee Board testified as follows:
“The problem with the lakefront is that during severe weather, either northwesters, hurricanes, low pressure, when the lake tides are high enough and the wind strong enough, cause water to rush over the seawall. It is two problems. The water coming over the seawall causes erosions in the area immediately south of the seawall. It also carries sand from the bottom of the lake up onto this same area and washes that, plus some erosion, into Lakeshore Drive. At that time, we have to close down Lakeshore Drive, remove the sand that has been washed up from the lake bottom. We haul that off. Sometimes we, in an effort to get the road back into operation, we cast that sand up onto, up onto the shore instead of waiting to load it into dump trucks. Normally, we like to do that; load it into the dump trucks, haul the sand away because the sand is not the type of material that prevents erosion. We try to replace the erosions with a clay material that we stockpile at the Lakefront Airport. This clay material is brought in after the holes and after the severe weather causes the erosion. It’s brought in at a time when we can get in that area with dump trucks without causing more damage. We haul the material in and dump it. We rough grade it. At times, the material we bring in there is wet. By the time we spread it out, we have to let it dry so that it can be graded satisfactorily; so at times, you have, you have holes; at time, you have piles of material there, and at other times, after it’s graded, we seed it and wait until the next time that the rough weather comes.”
He further explained, that the seawall was built in 1929 before the development of modern methods that prevent wave action erosion in the expansion joints, where the erosion is most prevelant. In addition the normal wave action of the lake causes erosion under the seawall causing the land adjacent to it to sink. It is not uncommon for deterioration adjacent to the seawall to occur overnight, and it would be near impossible to repair every hole prior to opening the area to the public each day.
Our Supreme Court, in Entrevia v. Hood, supra, gave a most enlightening discussion of the difficult problem of determining an unreasonable risk of harm by stating:
“The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Articles 2317 and 2322 state general precepts and not detailed rules for all concrete cases, it becomes the interpreter’s duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility.” Id. at 1149.
The Court continued by requiring the judge to consider “... the moral, social and economic values as well as the ideal of justice in reaching an intelligent and responsible decision.” Id. at 1149. Furthermore, the court noted that “... the activities of man for which he may be liable without acting negligently are to be determined after a study of the laws and customs, a balancing of claims and interests, a weighting of the risk and the gravity of harm, and a consid *165 eration of individual and societal rights and obligations.” Id. at 1149.
Although we have reviewed various cases[2] in our circuit and throughout the state wherein the above cited principles of Entrevia, supra, have been utilized to define unreasonable risk of harm, the only conclusion we reach is that each case must be determined on its own particular facts and circumstances.
There can be no serious argument about the social utility of the lakefront area in New Orleans. As noted by the trial judge it is a widely used recreational area, and many conveniences are provided the public, such as parking bays, benches and picnic tables.
Weighing the fact that the elements of nature are the cause of the erosion and deterioration along the lakefront area, especially immediately adjacent to the seawall, and that it would be an unduly and costly burden on the Levee Board (and consequently the public) to require daily inspection and repair, we conclude that the risk of harm created by the hole was not unreasonable. We deem it unreasonable to require the Levee Board to correct the daily consequences of nature. In this area of South Louisiana erosion is a common problem that the law and custom has recognized, and one for which we cannot hold the public (Levee Board) responsible. Therefore we conclude that the trial judge was in error in holding the Levee Board liable under Article 2317.
Although Landry also alleged a cause of action in negligence, the basis of the trial court’s decision, and the argu-. ments before this Court, is liability under Article 2317. However, we have considered the negligence allegation and reject same since there is no evidence that the Levee Board had knowledge of the hole, either constructive or actual, prior to the accident and failed to repair it.
AH costs to be paid by Landry.
REVERSED AND RENDERED.

. There is confusion in his testimony as to whether only one or both of his feet had reached the top.

. See in particular, Aguillard v. Langlois, 471 So.2d 1011 (La.App. 1st Cir.1985); Rigao v. Sewerage and Water Board, 467 So.2d 1263 (La.App. 4th Cir.1985); Jones v. Sewerage and Water Board of New Orleans, 430 So.2d 1063 (La.App. 4th Cir.1984); Goodlow v. City of Alexandria, 407 So.2d 1305 (La.App. 3rd Cir.1981).