PRESTON H. HUFFT, Judge Pro Tem.
The plaintiff brought suit against the Sewerage and Water Board of New Orleans (sometimes referred to below as the “Board”) and the City of New Orleans to recover damages sustained as a result of stepping into an open water meter box, located in a city sidewalk, the cover of which box was missing. The trial court dismissed the action against the City of New Orleans because plaintiff failed to present any evidence of the City’s custody and control of the meter box or of negligence whereby liability could be imputed to the City. This dismissal is not before us on appeal. The trial court did find that the Board had custody and control of the applicable meter box and did further find the Board liable for damages sustained by plaintiff. The Board has appealed suspen-sively from the judgment of liability and award of $3,800.00 in damages.
The issue before us is whether the facts support the trial court’s finding that the Board, as owner and custodian of the meter box, maintained it in such a manner as to present an unreasonable risk of harm so that the Board should be liable for damages sustained by the plaintiff due to the strict liability of an owner or custodian imposed by La.C.C. Art. 2317. We affirm.
The record reflects that Geraldine Ellis, plaintiff, sustained injuries by stepping into an open meter box located in a sidewalk on a street in the New Orleans French Quarter and which had been installed in the sidewalk by the Board. The meter box did not have a cover at the time of the accident. Plaintiff sustained injuries to her leg and back and suffered pain as a result. At the time that plaintiff stepped into the meter box, she was walking with a companion on either side and admitted to behaving in a rather animated, frolicsome manner. The trial court found that plaintiff’s conduct was not negligent.
The record also reflects that the Board, as a matter of normal business practice, causes meters to be read once every two months. Plaintiff established that the meter reader who had last read the meter necessarily had to remove its cover in order to perform the reading. No specific evidence indicates whether the meter reader had replaced the meter cover except that he always did so as a matter of practice in performing his duties. Testimony presented by witnesses for the defense indicates that the Board knows a particular problem of missing meter covers exists in the French Quarter, where plaintiff’s injury occurred, allegedly due to tourists removing the covers for souvenirs. Despite being aware of this particular problem, the Board has not instituted any special measures to remedy the problem such as causing additional inspection of meter covers in the French Quarter or rendering them less susceptible to removal by unauthorized parties. However, the policy of the Board is to cause the prompt replacement of missing meter covers by its workers who notice a cover may be missing while performing other services. In fact, on the very day of the accident, but after it occurred, an employee of the Board, serving in a supervisory capacity, noticed that the cover of the applicable meter box was missing and promptly caused its replacement.
In rendering judgment, the trial court judge noted that our last consideration of a missing meter cover occurred in Rigao v. Sewerage and Water Board, 467 So.2d 1263 (La.App. 4th Cir.1985), which presents difficulties as precedent because the five member panel’s decision splits 2-1-2: two found that the missing meter cover did not present an unreasonable risk of harm, one concurred in the result based on the opinion that La.C.C. Art. 2317 did not apply, and two found that the Board’s normal conduct in examining meter covers once every two months did present an unreasonable risk of harm. In appreciation of the difficulty in following our last ruling, the trial court judge decided the instant case by applying the facts to the principles set forth in Entrevia v. Hood, 427 So.2d 1146 (La.1983), cited as support in the plurality opinion in Rigao, supra.
In Entrevia, supra, the plaintiff sustained injuries by falling through steps on a porch of an abandoned house situated in a rural area. The plaintiff had accompa *647 nied a friend who was looking for a site where she could have an assignation with her husband who was temporarily out of jail on a work detail. The owner of the house had fenced it off and posted no trespassing signs. The court determined that the condition of the house presented no unreasonable risk of harm to the plaintiff under the circumstances such that the owner would not be held strictly liable under La.C.C. Art. 2317. The court’s decision rests upon the following analysis:
In order to recover under strict liability under Article 2317 or 2322 against the owner of a building, the injured person must prove
(1) that the building or its appurtenances posed an unreasonable risk of injury to others, and
(2) that his damage occurred through this risk.
Entrevia, supra, at 1148.
If the owner’s or custodian’s strict liability is established by means of the foregoing, he may avoid damages by proving that the damage was caused:
(1) by the fault of the victim,
(2) by the fault of a third person, or
(3) by an irresistible force.
Entrevia, supra, at 1148.
After considering the requisites of and defenses to strict liability, the Court ruled that the plaintiff was not entitled to the award of damages merely because she had proved she sustained injury caused by the collapse of the steps. “It was incumbent upon her to prove that her injuries were caused by a quality of the building that posed an unreasonable risk of harm to others.” Entrevia, supra, at 1149. As an approach for resolving such an issue, Justice Dennis, in writing the majority opinion, suggested that the following question be asked:
“If the custodian of the thing is presumed to have knowledge of its condition before plaintiff’s injury, would he then have been acting reasonably by maintaining it and exposing others to it?”
Entrevia, supra, at 1150.
In reviewing our opinion in Rigao, supra, we first note that a total of four of the five panel members, who comprised the plurality and the dissent, agreed that a missing meter cover might but did not necessarily present an unreasonable risk of harm. Such agreement strongly implies that similar facts should be analyzed under La.C.C. Art. 2317. The plurality opinion in Rigao, supra, would allow that a missing meter cover did constitute a defect but did not necessarily present an unreasonable risk of harm. The court must balance the defect, being the facility of removal by a vandal or thief, against the requirements of utility. This Court used such an approach in deciding Baker v. Sewerage and Water Board, 466 So.2d 720 (La.App. 4th Cir.1985). The dissenting opinion in Rigao, supra, agreed that removal of a cover did not present, per se, “an unreasonable risk of harm (when balanced against the utility of a public water system) where there exists the possibility of removal by pranksters,” but would have found the interval of two months between inspections of meters as imputing constructive notice to the Sewerage and Water Board. Rigao, supra, at 1265-66. This Court used such an approach in deciding Swain v. Sewerage and Water Board of New Orleans, 413 So.2d 233 (La.App. 4th Cir.1982).
In our review of the decisions of the cases cited above, we are most impressed with how the decision of each case arises from the particular fact situation presented. In the case at bar, the Sewerage and Water Board itself established that a special or particular problem exists with respect to missing meter covers in the French Quarter of New Orleans, allegedly because tourists take the meter covers for souvenirs. The record also establishes that the Sewerage and Water Board has not instituted any inspection measures for missing meter covers in the French Quarter other than the normal inspection routine coincident with reading meters nor has the Board done anything that might frustrate removal by those who should not do so. When these facts are presented in answer to the question formulated by Justice Dennis in Entrevia, supra, and quoted above, we must necessarily conclude that such conditions constitute an unreasonable risk *648 of harm to sidewalk pedestrians in the French Quarter for which the Board is strictly liable under La.C.C. Art. 2317.
The record establishes that the plaintiff in the instant case suffered her damages as a result of the unreasonable risk of harm presented by the Board. No defense of fault by the defendant or by a third person or of causation by an irresistible force has been shown by which the Board may avoid damages. The Board might argue that it should avoid damages due to the alleged acts of unknown tourists or third parties; however, such an argument begs the question. The unreasonable risk of harm arises out of the circumstances that the meter covers can be easily removed, that the Board’s historical experience is that tourists or third parties frequently remove meter covers from sidewalks in the French Quarter but that the Board takes no special inspection or protective measures despite the heavy pedestrian traffic. These acts of removal are not isolated, random events caused by children or pranksters as to which the Board may not have had notice. The known or reasonably knowable acts of removal by third persons under these circumstances, without any protective or remedial measure instituted by the Board, should be considered a factor for determining whether the Board’s conduct presents an unreasonable risk of harm rather than a defense for avoiding damages under strict liability.
AFFIRMED.