537 So.2d 351 (1988)
Mr. Edward J. LEVIE, III, et al.
v.
ORLEANS PARISH SCHOOL BOARD, et al.
No. 88-CA-0519.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1988.
Writs Denied March 3, 1989.
Mollere & Flanagan, Wayne H. Scheuermann, Metairie, for plaintiff-appellee Edward J. Levie, III, et als.
Jefferson, Bryan, Gray & Jupiter, Ethel A. Simms, Trevor G. Bryan, New Orleans, for defendant-appellant Orleans Parish School Bd.
Before SCHOTT, C.J., and BARRY, KLEES, BYRNES and LOBRANO, JJ.
*352 KLEES, Judge.
Defendant, the Orleans Parish School Board, appeals the district court's judgment awarding $176,000.00 to plaintiffs, whose minor daughter was injured on the playground of Hynes Elementary School.
On May 24, 1983, twelve-year-old Jennifer Levie fell and hurt her ankle in the school yard of Hynes Elementary, where she was waiting to meet her cousins, who were Hynes students. The fall occurred when, while walking toward the monkey bars, Jennifer stepped in a hole in the ground and her foot became trapped by the Y-shaped root of a tree which surrounded the hole. Both the hole and the root were covered with grass.
Jennifer was immediately diagnosed as having either strained ligaments or a displaced fracture, and her leg was placed in a cast to her knee. The cast was removed by Dr. Bruce Razza, her orthopedic surgeon, on June 21, 1983, and Jennifer was released. On May 16, 1984, she again consulted Dr. Razza concerning pain in her ankle which had begun about one month after the cast was removed. She also complained of swelling and pain in her knee and occasions when her knee would "lock," causing her to fall. At this point, Dr. Razza determined that Jennifer had a probable torn medial meniscus (torn cartilage) in her right knee, as well as post-traumatic arthritis in her right ankle and knee, all of which were likely to have been caused by her fall in the school yard. Dr. Razza has not recommended surgery, but has treated these problems with medication and heat therapy. As a result of these injuries, Jennifer has had to severely restrict her participation in physical activities, such as sports, dancing, and physical education classes.
Jennifer's parents sued the Orleans Parish School Board claiming it was strictly liable under Civil Code article 2317 for the defective condition of the playground. The case was tried in the district court on December 10, 1987, and the trial judge found in favor of plaintiffs, awarding them $176,000 ($1,000 medical expenses plus $175,000 general damages) for their daughter's injuries. On appeal, the school board contends that the trial judge committed manifest error by finding that the condition of the school yard posed an unreasonable danger to Jennifer Levie and thus holding the board strictly liable. Alternatively, defendant argues that the trial court erred in awarding an excessive amount of damages. After reviewing the evidence, we affirm the trial court's judgment of liability but find that the damages awarded were excessive.
I. Liability
In order to make out a case under Civil Code article 2317, the injured party must show: (1) that the thing he complains of was in the care or custody of the defendant; (2) the existence of a vice or defect in the thing; and (3) that his injury was caused by the vice or defect. Loescher v. Parr, 324 So.2d 441, 449 (La.1975). The school board does not dispute that it had custody of the Hynes school yard nor that Jennifer's injury was caused by a condition of the yard; the issue is whether the school yard was defective.
For a thing to be defective so as to trigger strict liability, it must pose "an unreasonable risk of harm to persons." Entrevia v. Hood, 427 So.2d 1146, 1149 (La. 1983). Regarding this criterion, the Supreme Court in Entrevia stated:
The unreasonable risk of harm criterion, however is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Article 2317 and 2322 state general precepts and not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility.
Id. at 1149 (Citation omitted.). Defendant first argues that the hole in the Hynes school yard did not pose an unreasonable risk of harm because it was not visible, and because "[s]tudents had played ... around this tree for years without any reports of injury." In essence, defendant's argument is that the hole did not constitute a defect *353 because it was not discoverable. Unfortunately, under the law as it existed at the time of Jennifer's accident, whether or not the defect is discovered or discoverable is not relevant in determining the existence of strict liability.[1] As the Court stated in Entrevia v. Hood, "The owner is absolved from his strict liability neither by his ignorance of the [defective] condition ... nor by circumstances that the defect could not easily be detected." 427 So.2d at 1148. Thus, the inability of the defendant to know or prevent the risk is not a defense in a strict liability case. Id. at 1150.
Defendant also argues that the condition of the yard did not pose an unreasonable risk of harm because it was caused by a natural phenomenon, the tree, which has aesthetic value and is a desirable thing to have on a school playground. This argument is partially based upon the assumption that the hole had formed naturally, which was not proven or even addressed at trial. Moreover, while we recognize that the determination of what constitutes an unreasonable risk of harm involves a balancing of interests (see Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133, 140 (1971)), we believe that the risk of injury to a child such as Jennifer Levie greatly outweighs the aesthetic value of this particular tree. Furthermore, it was never shown that the only appropriate remedial measure would be removal of the tree, rather than merely cutting back the offensive root and/or filling in the hole.
In Landry v. State, 495 So.2d 1284 (La. 1986), the Supreme court found that a hole immediately adjacent to the Lake Pontchatrain seawall presented an unreasonable risk of harm to the plaintiff, a recreational fisherman who was injured when he tried to avoid stepping in the hole, which was partially obscured by grass. Although the hole was a natural consequence of wave action and erosion, the Court found that the risk of harm it created in this heavily used recreational area outweighed the cost of prevention. The Court stated:
Our review of the record disclosed no evidence was presented to confirm the argument that the costs of repair or frequent inspections would be an undue burden on the Levee Board. On the contrary, there was evidence of the Levee Board's existing efforts to clean up after severe weather and to keep the lakefront and seawall in good repair. The Levee Board presented a log which showed a seven-month period of periodic clean-up or grading and filling along the seawall in the aftermath of severe weather. Given the board's existing maintenance efforts, the cost of filling holes such as the one which injured plaintiff does not seem a burden when weighed against the risk of harm presented by holes in an area where recreational use occurs daily, and the number of people present is large and their activities varied.
495 So.2d at 1288.
The facts of Landry are similar to those of the instant case in several key ways. Like the lakefront, a school playground is a heavily used recreational area. As in Landry, there was no showing at trial that the cost of repair would be prohibitive; in fact, the supervisor of grounds for the Orleans Parish school system testified that he inspected the Hynes playground more frequently than most other schools, about three to five times per year, because of the special hazards posed by the large number of trees. He also stated that the employees who mow the grass three times per month are instructed to check for holes and other potentially dangerous conditions so that these may be corrected.
Jennifer Levie testified that the hole into which she stepped was deep enough that the ground came to one inch above her ankle. We find that the hole combined *354 with the tree root posed an unreasonable risk of harm to Jennifer. Under the law, the fact that this condition was not easily discoverable does not absolve the school board. Therefore, the trial court did not commit manifest error by holding defendant strictly liable for Jennifer's injuries.
II. Damages
Defendant also contends that the trial court abused its discretion in awarding an excessive amount of damages. We agree.
Jennifer Levie was twelve years old at the time of her accident. She spent approximately one month in a cast to her knee as treatment for what was later determined to be strained ligaments in her right ankle. One year after her initial release by Dr. Razza, Jennifer returned to the doctor complaining of chronic pain, swelling and "locking" of her right knee, which was diagnosed as a probable torn medial meniscus that related back to the accident. She later complained of pain in her ankle, especially at night, and "popping" and "cracking" of the ankle. According to her physician, Dr. Razza, Jennifer has a mild degree of laxity in her ankle, as well as non-degenerative, post-traumatic arthritis. Surgery was not recommended. Dr. Razza was the only physician who testified. Although he indicated that Jennifer would continue to have pain, he did not assign any percentage of permanent disability to either her ankle or knee.
Jennifer testified that prior to the accident, she had been a member of her elementary school's basketball, volleyball and softball teams, and had taken dancing lessons, run track, and participated in equestrian activities. She stopped her equestrian activities sometime after the accident, when her knee buckled under pressure and caused her to fall from her horse. She also testified that since the accident, the pain in her knee and ankle has prevented her from participating in any of these sports and has caused her to get a medical excuse from P.E. class. Doctor Razza stated that while some types of exercise would be helpful to Jennifer, there are numerous forms of physical activity she cannot do.
In awarding $175,000 in general damages, the trial judge emphasized Jennifer's tender age and the fact that her physical activity would be restricted for the rest of her life. He also noted that Jennifer had apparently gained a good deal of weight since the accident, which her mother had attributed to her inability to exercise as before.
Before judging the trial court's award of damages as excessive, we must examine the individual facts and circumstances peculiar to this case to determine whether the award constitutes a clear abuse of discretion. Reck v. Stevens, 373 So.2d 498, 500 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Prior awards may serve as an aid in this determination only where the present award is shown to be greatly disproportionate to the mass of past awards for truly similar injuries. Reck, supra, at 501.
Our review of the record in this case leaves no doubt that the trial judge abused his discretion in awarding an excessive amount of damages, and an examination of prior awards merely confirms this point. Although the trial judge relied heavily on Jennifer's young age in determining quantum, past awards to youthful plaintiffs with similar injuries have been significantly lower. See, e.g.: Johnson v. Allstate Ins. Co., 410 So.2d 777 (La.App. 4th Cir.1982), writ denied, 414 So.2d 378 (La.1982) (Confirming award of $18,775 to minor who suffered a fractured tibia of the right leg, was hospitalized briefly, wore a cast for two months, and was left with residual pain and a 5% permanent disability of the leg); Vega v. St. Bernard Water District No. 1, 398 So.2d 1248 (La.App. 4th Cir. 1981), writ denied, 401 So.2d 986 (La. 1981) (Confirming award of $30,000 to thirteen-year-old boy who suffered amputation of a portion of his big toe, causing impairment of his athletic ability, which had been above average); Buckley v. Exxon Corp., 399 So.2d 1225 (La.App. 3d Cir.1981) (Confirming award of $40,000 to seven-year-old boy whose legs were run over by a tractor trailer and who had residual pain and a slight permanent diability of his left knee); *355 Bickford v. Reliance Ins. Co., 415 So.2d 405 (La.App. 1st Cir.1982), writ denied, 420 So.2d 442 (La.1982) (Confirming award of $45,000 to sixteen-year-old plaintiff with severe fractures of right knee and ankle as well as other injuries causing a permanent partial disability of 40% to his right leg); Fleischmann v. Hanover Ins. Co., 470 So.2d 216 (La.App. 4th Cir.1985) (Confirming award of $100,000 reduced to $72,000 to account for plaintiff's fault, to bicyclist with injured knee who had been a high school track star with aspirations of obtaining an athletic scholarship to a major university, and whose residual knee damage prevented him from running at his previous level).
Similarly, a look at past damage awards to adult plaintiffs with comparable injuries shows the trial court's award to be out of proportion. See, e.g.: Bergeron v. Firestone Tire & Rubber Co., 482 So.2d 54 (La.App. 5th Cir.1986), writ denied, 484 So.2d 136 (La.1986) (Confirming award of $30,000 for pain and suffering to plaintiff with multiple muscle strains in her right foot and leg which would continue to cause her pain indefinitely and which prevented her from doing such pre-accident activities as bowling, dancing, walking and domestic chores); Wallace v. State Farm Mutual Auto Ins. Co., 509 So.2d 466 (La.App. 3d Cir.1987), writ denied, 510 So.2d 377 (La. 1987) (Confirming award of $50,000 to plaintiff with a 20% impairment of his left knee which prevented him from engaging in jogging, basketball, racketball and bicycling, activities in which he had previously participated).
Considering the facts of the instant case and using the cited prior decisions as a guideline only, we find $75,000 to be the highest amount that was reasonably within the discretion of the trial court to award for the present and future pain and suffering of Jennifer Levie. See Reck v. Stevens, supra, at 500. Accordingly, the judgment of the trial court is hereby modified to reduce the amount awarded plaintiffs to $75,000 in general damages plus $1,000 in medical expenses, or a total of $76,000. In all other respects, the judgment is affirmed.
MODIFIED AND AFFIRMED.
SCHOTT, C.J., and BARRY, J., dissent with reasons.
SCHOTT, Chief Judge, dissenting.
I agree with Judge Barry's dissent. The trial court's conclusion that this two-inch natural depression combined with a part of tree root on this park-like school campus constituted an actionable defect was manifestly erroneous. It did not present an unreasonable risk of harm.
BARRY, Judge, dissenting.
Jennifer Levie and her mother testified regarding the alleged ground defect in Hynes' school yard. It is alternately described as a depression, an indenture, and a hole, (the majority adopts "hole") hidden by grass, with a "Y" or "V" shaped root in which Jennifer Levie allegedly caught her foot. Jennifer stated her foot went down to the middle of her tennis shoe. Plaintiff's counsel attempted to clarify:
Q: You are pointing to the part above your ankle?
A: Before your ankle, about an inch before your ankle.
Jennifer stepped down to an inch below her ankle which makes the ground next to the tree root approximately 2 inches lower than the adjacent area.
The majority's reliance on Landry v. State, 495 So.2d 1284 (La.1986) is misplaced. Landry testified about a "large hole" which was partially obscured by thick, tall grass, and measured about 8 inches deep. His attorney said the hole was approximately 3 feet long and half as wide.
Robert Thompson, Orleans Parish School Board Grounds Supervisor, testified that because of the number of trees in the yard, Hynes' grounds were inspected (by walking survey) more than others, about three to five times a year. He stated that the teachers and grass cutters were instructed to look for potential hazards. None were reported.
*356 Under Art. 2317 a defect must present an unreasonable risk of harm in order to trigger the application of strict liability. Entrevia v. Hood, 427 So.2d 1146 (La. 1983).
I disagree with the majority's conclusion that the ground "combined with the tree root posed an unreasonable risk of harm." The record establishes only a minor, very common irregularity in the ground which cannot be described as unreasonable. The tree root was the cause of this alleged accident and it cannot be considered an unreasonable risk of harm.
Finding liability under these facts is tantamount to the School Board becoming the insurer for any ground/tree-related accident in a school yard. Such a holding will encourage the removal of trees from school yards and create liability in other areas used by children.
I also dissent from the reduced award of $75,000. Jennifer wore a half leg cast for one month for strained knee ligaments. One year later she had laxity in her ankle and non-degenerative arthritis. No surgery was recommended and no permanent disability was assigned.
If there is liability, I would award $25,000 for general damages.
NOTES
[1] The legislature has recently changed the law of strict liability by providing that a public entity (such as the school board) cannot be held liable for damages caused by the condition of things within its care and custody unless the public entity had "actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so." R.S. 9:2800. This statute, which became effective on July 12, 1985, changes substantive law and therefore is not to be applied retroactively. Landry v. State, 495 So.2d 1284 (La. 1986).