433 So.2d 417 (1983)
David MALTZAHN
v.
CITY OF NEW ORLEANS, Sewerage & Water Board, and ABC Insurance Company.
No. CA-0599.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1983.
*418 Walter F. Gemeinhardt, New Orleans, for plaintiff-appellee.
Salvador Anzelmo, Elmer G. Gibbons, Douglas P. Wilson, Avis M. Russell, New Orleans, for defendants-appellants.
Before REDMANN, BARRY and WARD, JJ.
BARRY, Judge.
Plaintiff appeals the dismissal of his tort action against the City of New Orleans for injuries received when he lost control of his motorcycle while crossing two dips in a street.[1]
The accident occurred on or about July 28, 1980[2] at approximately 3:30 p.m. The weather was clear and there was no accumulated water in the street. Plaintiff was going to the longshoreman hiring center in the 700 block of Richard Street seeking work. Along the way on I-10 he met Medrick Luckett, another longshoreman also on a motorcycle, and they rode into town together from Kenner. At the corner of Chippewa and Richard Streets both stopped at the stop sign and Luckett, on plaintiff's right, pulled off slightly in front of plaintiff. Approximately 150 feet from the corner plaintiff crossed the first dip which allegedly caused him to lose control of the bike. Before recovering his balance he encountered the second dip, slid approximately ten feet, and landed with the motorcycle on top of him.
Plaintiff claims the City was negligent because it did not maintain the street in a reasonably safe condition nor post warning signs which resulted in a "trap." By supplemental petition he alleges the City's strict liability under LSA-C.C. Art. 2317[3] *419 for injuries caused by a defective thing in one's custody. The Trial Judge held ".... Plaintiff has failed to prove either the negligence of the City as a cause of his injuries or that the condition of the roadway at the scene of Plaintiff's accident created an unreasonable risk of harm to him."

Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980) applied LSA-C.C. Art. 2317 liability to municipalities and cited Loescher v. Parr, 324 So.2d 441 at 446 (La.1976) which stated the plaintiff must prove:
... that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defectthat is, that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect. Jones, supra, at 739.
The determining issue is whether plaintiff sustained his burden of proving that the alleged street defect "occasioned an unreasonable risk of injury to another." The "unreasonableness" in a strict liability case is similar to a determination of ordinary negligence; in both, a balancing of interests is required.
In Entrevia v. Hood, 427 So.2d 1146 (La. 1983), our Supreme Court's most recent pronouncement on strict liability, Justice Dennis said at pp. 1149, 1150:
... As this court has noted in relation to other forms of strict liability under the civil code, the activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations. Langlois v. Allied Chemical Corporation, 258 La. 1067, 1084, 249 So.2d 133, 140 (1971).
The judicial process involved in deciding whether a risk is unreasonable under Article 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980), and in deciding the scope of duty or legal cause under the duty risk analysis. Hill v. Lundin Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Green, The Causal Relation Issue, 60 Mich.L.Rev. 543, 563 (1962). This is not because strict liability under Article 2317 is equivalent to liability for negligence, but because in both delictual areas the judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social and economic considerations, in the same way that the legislator finds the standards or patterns of utility and morals in the life of the community. B. Cardozo, The Nature of the Judicial Process, at P. 105 (1921); See also, Green, The Causal Relation Issue, 60 Mich.L.Rev. 543 (1962).
Therefore, under either a negligence or strict liability analysis to determine whether a risk is unreasonable, the court must balance the probability of the harm posed plus the gravity of the harm which may ensue versus the utility of the thing in its condition on the date of the accident. The rights and duties of the parties must also be considered. This will necessarily involve examination of the conduct of both parties, i.e., was plaintiff's conduct, as it relates to the thing, reasonable; were defendant's actions or lack thereof unreasonable under the circumstances?
A motorist, in the absence of knowledge or the opportunity to avoid a dangerous condition, is entitled to assume the roadway is safe for travel. There is a corresponding duty imposed on the City to repair and maintain its streets in a reasonably safe condition such that a motorist exercising ordinary care under the circumstances will not be injured due to the condition of the roadway. LeBlanc v. State, Department of Highways, 419 So.2d 853 (La.1982).
Herman Shushan, operating a business at 720 Richard Street, testified he made numerous phone calls to the City regarding the dips, but got no results for two or three months. When he finally "got to the right person," the street was repaired within three days. Plaintiff's other witnesses testified *420 at trial (two years after the accident) the indentations in the street had been present for six months to a year before the accident. Thomas Finas of the Department of Streets said he checked the record for complaints on this particular block of Richard Street and found one complaint made on February 11, 1980 and repairs were completed February 13, 1980 (five months prior to the accident). The next recorded complaints were dated August 1, 1980 and August 26, 1980 (subsequent to the accident) and repairs were completed on October 2, 1980. Finas said on the date of the accident (July 28, 1980) there were no outstanding complaints. He also stated that every complaint received by telephone was reduced to writing.
There were general statements by plaintiff's witnesses that the drop in the first dip was sudden and came up quickly. There was testimony that the first dip was 7-10 inches deep, approximately four feet long, and took up the entire width of the street when cars were parked on both sides. The second dip, approximately ten feet from the end of the first, was not as deep or as wide. Plaintiff also presented evidence showing the amount of asphalt used by the City to repair the dips.[4]
Shushan, when asked by the Court how abrupt the incline was, responded it was "not a sudden drop." Plaintiff, while indicating on several occasions that the drop was sudden, was asked if he measured (with a ruler) the depth and answered: "It was hard to measure how deep it was. It slopes down and the street was rounded." Ellis Gusler, field supervisor over the district containing Richard Street, inspected the depressions on August 1 and 26, 1980. He stated if the dips were severe and required urgent attention, that fact would be indicated on the Department of Streets Maintenance Complaints. No such notations were made and, since repairs were not completed until October 2, 1980, the City apparently determined the defect was not severe. The Trial Judge explicitly found the condition of the street did not present an unreasonable risk of injury. He pointed out that plaintiff did not prove the degree of the slope or incline either going into or out of the dips.[5]
Regarding the probability of injury and gravity of the harm that could ensue, most of the testimony concerned damage to automobiles and trucks. One witness stated he broke the left front shock on his 1979 Chrysler. Others testified that the undercarriage of vehicles would scrap on the street when coming out of the first dip. No witness could recall another accident similar to the one in question. Luckett, who rode his motorcycle every day, stated that he was aware of the depressions, always went around them, and never fell. All of plaintiff's witnesses, except plaintiff, testified they were aware of the existence of the depressions. Several stated the dips could not be seen until it was too late to avoid. It appears, however, from photographs in the record, that the larger dip was clearly visible and the slope gradual. We are also cognizant that on the day of the accident the weather was clear, there was no accumulated water in the street, it was 3:30 p.m. on a July afternoon, and plaintiff's visibility was not impeded.
Regarding plaintiff's conduct as it relates to the thing, every witness who was questioned on plaintiff's speed testified he was traveling approximately 20 m.p.h. However, contrary to plaintiff's brief, plaintiff and another witness (Cosne) stated the bike went up two feet in the air after entering the first dip. The Trial Judge did not believe that plaintiff's speed and the size of the dip, considered together, could both be accurate and cause the accident. He concluded that either the plaintiff was going *421 faster than 20 m.p.h. or the accident did not occur as related. Under either circumstance, he found the City was not liable.
We find the probability of this particular risk and the gravity of the threatened harm were negligible when weighed against the utility of the road in the condition that existed on the date of the accident. The utility factor is high because, although there were two other ways of getting to the hiring hall, the evidence shows Richard Street is heavily used and congested. After a balancing of the interests, we conclude the Trial Judge could have reasonably determined that the City was not negligent nor unreasonable as to its street maintenance under these circumstances.
Proof of a defect is not achieved by the mere showing that an accident or injury occurred. Broussard v. Pennsylvania Millers Mutual Ins. Co., 406 So.2d 574 (La. 1981). The custodian will not be held responsible for every injury resulting from any risk, but only those injuries caused by a unreasonable risk of harm to others. Shipp v. City of Alexandria, 395 So.2d 727 (La. 1981), Entrevia, supra.
This was a purely fact call reasonably supported by the record and appellate courts cannot disturb such a finding unless it is clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973). We find no manifest error in the Trial Judge's conclusion that the condition of the street did not occasion an unreasonable risk of harm. Accordingly, the City cannot be held responsible under strict liability or ordinary negligence.
The judgment of the trial court is affirmed with costs assessed to plaintiff.
AFFIRMED.
NOTES
[1] The Sewerage and Water Board was dismissed on a summary judgment.
[2] Plaintiff testified July 28th. He also stated he was taken to Touro Infirmary and Charity Hospital on the date of the accident and hospital records show he was seen on July 29, 1980.
[3] LSA-C.C. Art. 2317 provides, in pertinent part:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act ... of the things which we have in our custody...."
[4] While this amounted to somewhere between 17,300 and 30,000 lbs., the witness could state only that 200 lbs. would fill one square yard two inches deep, but he was not able to translate the quantity into the size or severity of the indentation.
[5] Implicit in the judgment is the finding that the City did not have actual notice of a defect (at the time of the accident) and cannot be charged with constructive notice due to not discovering the "dangerous" condition.