533 So.2d 132 (1988)
Margaret W. SCROGGINS
v.
SEWERAGE & WATER BOARD OF NEW ORLEANS and the City of New Orleans.
No. 88-CA-0349.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1988.
Harry P. Gamble, III, Gamble and Gamble, New Orleans, for plaintiff-appellant.
Harold D. Marchand, Gen. Counsel, Office of Special Counsel Sewerage and Water Bd. of New Orleans, New Orleans, for Sewerage and Water Bd. of New Orleans.
Joel P. Loeffelholz, New Orleans, for City of New Orleans.
Before GULOTTA, C.J., and SCHOTT and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, Margaret W. Scroggins, instituted this action seeking damages for the wrongful death of her son, Fred D. Scroggins Jr., who was killed in a motorcycle accident. Named as defendants were the City of New Orleans (City) and the Sewerage & Water Board of New Orleans (S & WB). Following trial on the merits judgment was rendered in favor of defendants, dismissing plaintiff's suit. Plaintiff now appeals.
On October 22, 1985, at approximately 4:45 p.m., Fred D. Scroggins Jr. was proceeding south on Milne Blvd., nearing the 6500 block. Milne Blvd. consists of two fairly wide traffic lanes, one for northbound traffic, one for southbound traffic. A grassy median or neutral ground divides *133 the two traffic lanes. In the 6500 block of Milne Blvd. Scroggins passed on the right, an automobile driven by Lloyd Tilly Jr. Scroggins pulled his 700cc Yamaha motorcycle in front of Tilly's vehicle, and moments later, near the intersection of Lane St., passed over a dip in the roadway followed by a bump. He lost control of his motorcycle and slammed into an automobile legally parked in the 6400 block of Milne Blvd. Scroggins was thrown some 33 feet, sustaining severe injuries. He never regained consciousness and died four days later.
Officer Daniel Mack investigated the accident and testified that the posted speed limit on Milne Blvd. was 35 mph. Officer Mack interviewed Mr. Tilly at the scene and related that Tilly informed him that Scroggins was traveling an estimated 80 mph when he passed him. However, at trial Mr. Tilly denied ever telling Officer Mack that Scroggins passed him at such a high rate of speed. Tilly stated that he was driving 30 mph and that Scroggins passed him going an estimated 35 to 40 mph. Officer Mack testified that he always writes down exactly what a witness tells him regarding the speed at which a vehicle was traveling. Mr. Tilly admitted that Officer Mack was writing things down as he interviewed him. He also admitted that he gave his statement to Officer Mack when everything was fresh on his mind, and that the longer the passage of time from an event the less he is able to remember it.
Officer Ross Mocklin was qualified by the court as an expert in accident reconstruction. In addition to being a police officer, Officer Mocklin was an accident reconstructionist who had testified as an expert in many different courts. Officer Mocklin calculated that Scroggins was traveling at a minimum of 63 mph when he struck the parked car. His calculation was based upon the amount of force necessary to move the vehicle Scroggins struck thirteen feet, the distance Officer Mack testified the parked vehicle had been moved forward. Officer Mocklin testified that the calculation of 63 mph was a minimum one, that he tried to err, if at all, on the conservative side. Although this factor was not considered by Mocklin, Mr. Tilly testified that as Scroggins was losing control of his motorcycle, its brake light was on. Thus, Scroggins was apparently traveling at least 63 mph even as he was applying his brakes. The trial judge actively participated in the examination of Officer Mocklin regarding the expert's basis for his calculations.
Officer Mack testified that the dip measured three inches deep. It was four to five feet wide and three feet long. He described it as more of a gradual depression than a dip. The bump, which was twelve to fifteen feet past the dip, measured four inches high and was approximately one and a half to two times the size of a manhole cover. He stated that the incline and decline of the bump was very gradual. Mary Landry lived at 6426 Milne Blvd. at the time of the accident. She testified that she had struck the bump once and it caused the bottom of her automobile to scrape the street. After that encounter she always drove around the bump. She stated that if you had not been over the bump before you would not have known how bad it was.
Edith Bernard had lived at 6424 Milne Blvd. for four months preceding the accident. She was familiar with the bump and said she used to avoid it. She had gone over it before but had never lost control of her automobile or apparently ever scraped the bottom of it on the street. Mr. Tilly was also familiar with the condition of the roadway at that location. He described the problems as a "big depression" and "two bumps". He said that when he hit the depression, even at 30 mph, he would "bottom out" or scrape his vehicle on the road surface. He also usually attempted to avoid the bump. He said a motorist could not tell the extent of the bump until he was "right on top of it"a distance which he estimated to have been twenty feet.
Ellis Gusler was a district supervisor with the City-Streets Maintenance Division. He was informed that there had been an accident on Milne blvd. at Lane Street. He was told to examine the condition of the roadway and correct any problems. He *134 found a buildup of asphalt covering a manhole cover; this was the bump. City workers cut out the asphalt four to six feet around the manhold cover and leveled off the road surface even with the top of it. They also remedied the depression or dip to make an even road surface. Mr. Gusler described the buildup of asphalt as "a small bump" and characterized the incline as gradual. He did not consider the overall condition of the street to be hazardous. He didn't know who covered up the manhole cover with asphalt but said the City would not normally do something like that. He stated that the S & WB maintained all sewer and drain lines, and that if its personnel had to dig up the street they would repair it themselves. Thomas Finas sent Mr. Gusler to repair the street. He indicated that it was repaired because it was or could have been dangerous. Neither Mr. Gusler nor Mr. Finas found any record of complaints regarding the dip and bump.
Rudolph St. Germain was the chief of the Networks Department for the S & WB. He was in charge of maintaining sewers, water drain lines, etc. His department had a paving division which restored any cuts made in the street to repair S & WB lines. He testified that it was the responsibility of the S & WB to maintain sewer lines under city streets but could find no record of any repairs made at the location in question. He also stated that the S & WB would not have covered a manhole cover with asphalt, but noted that on occasion the City sometimes covered them during a complete overlaying job.
Steven Gamble was Scroggin's roommate. Scroggins worked for Gamble in his Metairie restaurant. The two men had lived together at 6342 Milne Blvd. since July 1985. Gamble testified that he and Scroggins used to travel to and from the restaurant together but never came up Milne Blvd. past the location of the accident. He stated that, although Scroggins had only purchased the motorcycle less than four and a half months before the accident, he was "good on it" and could "handle" it.
From this evidence the trial court concluded that, although "the street was not perfect by any means, ... it did not occassion an unreasonable risk of harm to a motorcyclist traveling a reasonable rate of speed." He further found that Scroggins had not been traveling a reasonable rate of speed.
Plaintiff first contends that the trial judge erred by finding that Mr. Tilly's testimony regarding Scroggins speed was "thoroughly impeached by Officer Mack." Subsumed within this assignment of error appears to be plaintiff's contention that the trial court erred in concluding that Scroggins was traveling at an excessive rate of speed.
The applicable standard of review is contained in the following oft quoted language of the Louisiana Supreme Court from its opinion in Canter v. Koehring, 283 So.2d 716 (La.1973):
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Manifestly erroneous means clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Mr. Tilly denied telling Officer Mack that Scroggins passed him traveling an estimated 80 mph. He stated at trial that Scroggins was only going 35-40 mph. But Officer Mack's testimony was supported by his *135 report made contemporaneously with his investigation. The report stated that Mr. Tilly informed him that Scroggins was going 80 mph. Moreover, Officer Mocklin, the accident reconstruction expert, testified that Scroggins was traveling at least 63 mph when he hit the parked vehicle. The trial judge examined Officer Mocklin in detail. Mr. Tilly recalled that the brake light on Scroggins' motorcycle was on. Thus, it could have been inferred that Scroggins was traveling faster than 63 mph as he passed Tilly, before he lost control of his motorcycle. The trial judge could have reasonably found that Mr. Tilly's testimony at trial regarding Scroggins' speed was inaccurate and that Scroggins was traveling at least 63 mph when he lost control of his motorcycle and slammed into the parked car. We are unable to say such findings are clearly wrong.
Plaintiff next contends that the trial judge erred in finding that the street imperfections did not occasion an unreasonable risk of harm to a motorcyclist traveling at a reasonable rate of speed. This finding of fact precluded a finding of liability on the part of the City or S & WB.
Although it is questionable whether the defendants could have been held liable under a theory of strict liability,[1] to recover under either a theory of strict liability or negligence the plaintiff must have shown that the street presented an unreasonable risk of harm. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Maltzahn v. City of New Orleans, 433 So.2d 417 (La. App. 4th Cir.1983). The determination of what presents an unreasonable risk of harm involves a balancing of several factors including the probability and gravity of the harm presented by the risk against the social utility of defendant's conduct or the thing involved. Entrevia v. Hood, supra; Maltzahn v. City of New Orleans, supra. Defendants could be found liable for Scroggin's death only if the condition of the street presented an unreasonable risk of harm to a reasonable and prudent motorist exercising ordinary care. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975); Oliver v. Jefferson Parish, 408 So.2d 275 (La.App. 4th Cir.1981), writ denied, 413 So.2d 495 (La.1982).
The probability of harm to a reasonable and prudent motorist exercising ordinary care was apparently minimal. Although the testimony of Mr. Tilly and Ms. Landry indicated that a motorist might scrape his automobile when passing over the dip and bump, even at 30 mph according to Tilly, there was no evidence to indicate that a person was likely to lose control of his vehicle. Other testimony indicated that the depression and bump were not that severe. The dip was only three inches deep while the bump was only four inches high. The incline and decline of both the dip and the bump were gradual. Mr. Gusler, who deals with street repairs for a living, did not consider the condition of the street to be hazardous. We cannot consider the subsequent repair of the street as evidence of its danger. Boudreaux v. Exxon Co., U.S.A., 451 So.2d 85 (La.App. 3rd Cir.1984); Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.1980).
The gravity of the harm to a reasonable and prudent motorist exercising ordinary care, traveling perhaps slightly above, at, or under the posted speed limit, also appears to have been minimal. Neither Mr. Tilly, Ms. Landry nor Ms. Bernard reported experiencing even the slightest physical discomfort after passing over the dip and bump. Any property damage sustained as a result of scraping the bottoms of their vehicles was apparently minimal. It is common knowledge that the city street and sewer systems are necessary for life as we know it. The social utility of these public works is great and requires no further comment or discussion.
When the social utility of these public works are balanced against the minimal probability and gravity of the harm *136 presented by a gradual three inch dip and four inch bump, we find that the condition of this section of Milne Blvd. did not occasion an unreasonable risk of harm to a reasonable and prudent motorist exercising the ordinary care expected of him. The record evidence fully supports the trial judge's conclusion that the street did not present an unreasonable risk of harm to a motorcyclist traveling at a reasonable rate of speed. We are unable to say such a finding was clearly wrong.
The evidence shows that Scroggins was not a reasonable and prudent motorist exercising ordinary care. He was traveling at least 63 mph and quite likely even faster.
By plaintiff's last assignment of error he contends that the trial court erred by not properly applying the comparative fault principles contained in La.C.C. art. 2323 to apportion some percentage of fault to the defendants. We find no merit to plaintiff's assertion. Comparative fault comes into play only: "If a person suffers injury, death or loss as the result partly of his own negligence and partly as the result of the fault of another person or persons..." La.C.C. art. 2323 (emphasis added). A defendant must first be found liable for comparative fault principles to apply.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Under La.R.S. 9:2800 added by Acts 1985, No. 454, § 1, eff. July 12, 1985, neither defendant could be held strictly liable for defects in the street unless they had actual or constructive notice of the defect prior to the accident, and had a reasonable opportunity to remedy the defect but failed to do so.