583 So.2d 52 (1991)
George Bruce KITCHURA, Plaintiff-Appellant,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellee.
No. 22530-CA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
*53 C. William Gerhardt & Associates by William F. Kendig, Shreveport, for plaintiff-appellant.
David R. Hayman, Asst. Atty. Gen., Baton Rouge, Bobby L. Culpepper, Sp. Asst. Atty. Gen., B.G. Brunson, Jonesboro, for defendant-appellee.
Before MARVIN, VICTORY, and BROWN, JJ.
VICTORY, Judge.
This case arises out of a single-vehicle motorcycle accident on I-20 in Bossier City, Louisiana. Plaintiff appeals the trial court's ruling that the highway did not cause him to fall, or present an unreasonable risk of harm. We affirm.

FACTS
Plaintiff, Bruce Kitchura, testified he awoke early in the morning of August 9, 1987, prepared and ate breakfast, and left on his Honda CB-1100-F motorcycle to get his previous night's tips as a bartender from a fellow worker. It was still before daylight when the accident occurred as he was traveling eastbound in the right-hand lane of I-20. He stated there were street lights in the area, his motorcycle headlight was on, and he was traveling about 55 to 60 miles per hour.
Plaintiff testified he hit a bump in the road just before going over the Hamilton Road overpass and the motorcycle's front end began to wobble, making a fast vibration through the handle bars. Although he began regaining control of the motorcycle at the start of the overpass, he lost complete control on the other side and fell down in the roadway. There were no eyewitnesses to the accident other than plaintiff.
On January 15, 1988, plaintiff filed suit against the State of Louisiana through the Department of Transportation and Development (hereinafter DOTD) asserting negligence in the maintenance of the highway, and strict liability for its condition. DOTD answered the petition denying any liability, and alternatively claimed plaintiff was contributorily negligent in causing his damages.
Alvin Doyle and Duaine Evans, plaintiff's accident reconstruction experts,[1] testified the accident was caused by the motorcycle tires hitting the western expansion joint at the Hamilton Road overpass, then traveling over 21 feet of wavy asphalt, and finally hitting the eastern expansion joint, approximately 203 feet from the western joint. They based their opinions on the police report, the accident scene, and an interview with plaintiff.
Doyle and Evans testified the expansion joints were defective, primarily due to their width. Neither felt the wavy asphalt alone caused the fall.
Dr. Olin Dart, an expert for DOTD in the fields of traffic engineering, highway design, and accident reconstruction, testified that the expansion joints were the proper width at the time of the accident and that *54 the highway posed no unreasonable risk of injury to cars or motorcycles.
Marvin Sharpley, DOTD Parish Superintendent, drove the interstate once every two weeks to inspect it and crossed the Hamilton Road overpass about three times per day. He noticed no problem requiring repairs in July or August, 1987 before the accident on August 9th. He further stated that DOTD had received no motorist complaints about the condition of the Hamilton Road overpass.
Joe Murphy, DOTD District Supervisor for Bridge Inspection and Maintenance, checked the Hamilton Road overpass once every two years and wrote a report. The December 4, 1986 report, his report closest in time before the accident, noticed some problems in the road at the overpass. Contract repair work on the overpass, including cutting the western expansion joint to a four-inch width, was completed in June of 1987, about two months before the accident.
Gary Broderick, DOTD Project Engineer, testified he was the state's project engineer for the contract maintenance work done on the overpass and found no unsafe condition upon completion of the work in June, 1987.
Elton Stewart, DOTD parish maintenance specialist, checked the expansion joints after the accident and testified they were normal.
The state also called Harold Becker, a DOTD heavy equipment mechanic, who rode over this same area four times each week on a Honda 1100 Goldwing motorcycle in the summer of 1987 immediately prior to the accident. Becker said he had never experienced any trouble with the Hamilton Road overpass and/or the expansion joints located there.

CAUSE IN FACT
The trial judge rejected plaintiff's contention that the expansion joints and/or wavy asphalt caused the accident. The court concluded that expansion joints are necessary for a properly maintained highway, even though they "could possibly be hazardous to those persons who are risk-seeking enough to choose to ride motorcycles."
DOTD has the duty to keep the state's highways in a reasonably safe condition, a breach of which is determined on the facts and circumstances of each case. Manasco v. Poplus, 530 So.2d 548 (La. 1988); Roberson v. State through DOTD, 550 So.2d 891 (La.App.2d Cir.1989), writ denied 552 So.2d 387. Undoubtedly, this duty extends to all vehicles, including motorcycles, which are allowed by law to use the highways.
In Roberson v. State through DOTD, supra, we discussed the elements required for a plaintiff to prove negligence, one of which is cause-in-fact. Cause-in-fact is also an essential in the proof of strict liability. Entrevia v. Hood, 427 So.2d 1146 (La. 1983).
The trial judge's finding on causation is a factual determination that will not be disturbed absent a showing of manifest error. Dodson v. Wesbter Parish Police Jury, 564 So.2d 760 (La.App.2d Cir.1990), writ denied 567 So.2d 1127.
The trial judge found as a fact that plaintiff hit the second expansion joint at the eastern end of the bridge and then traveled approximately 500 feet before he fell to the pavement. Exhibit S-9, an aerial photograph of the highway introduced at trial, supports his conclusions. Officer Nicholson, who investigated the accident, marked on this exhibit the area where he remembered finding the motorcycle debris and the motorcycle's final resting point. Dr. Dart, who testified after Officer Nicholson, stated that when a distance legend was placed on the aerial photograph, the distances were measured to be about 440 feet from the east end of the bridge to the point of the first debris, and then another 230 feet from the point of debris to the final location of the motorcycle.
One of plaintiff's experts, Mr. Doyle, stated the greater the distance from the bridge to the final location of the motorcycle, the less likely it was the expansion joints caused the accident. He admitted that if the motorcycle had come to rest 500 *55 feet from the bridge, his opinion concerning causal connection between the roadway and the accident would be called into doubt.
We cannot say the trial judge was manifestly erroneous in finding that plaintiff failed to prove his fall was caused by the highway.

UNREASONABLE RISK OF HARM
The trial judge further found that expansion joints are generally up to four inches wide, as were these, and that expansion joints are necessary in modern road construction. The record provides ample evidence to support his finding that these expansion joints were not defective and did not present an unreasonable risk of harm.
The determination of what presents an unreasonable risk of harm involves a balancing of several factors, including the probability and gravity of the harm presented by the risk against the social utility of defendant's conduct or the thing involved. See Entrevia v. Hood, supra; see also Scroggins v. Sewerage & Water Bd., 533 So.2d 132 (La.App. 4th Cir.1988), where a motorcycle wrecked after traveling over a gradual three inch dip and a four inch bump. The court found this condition was not an unreasonable risk of harm.
In Lewis v. State, Department of Highways, supra, the state was held liable to a motorcyclist who hit an expansion joint four to five inches wide on I-12 going 55 to 60 MPH.[2] The court found an enlarged hole in the expansion joint presented an unreasonable risk of harm. Lewis, mentioned by the trial court in his opinion in this case, is factually distinguishable because there is no such hole in either expansion joint at the overpass, and the joints have been measured to be four inches, the proper width. Further, in Lewis, unlike the present case, there was an eyewitness to the accident who corroborated the cyclist's testimony that the highway's condition must have caused him to lose control of his motorcycle.
Several state witnesses explained that expansion joints are initially made at a width of four inches, and after they begin to close due to expansion, they are resawed to a four-inch width. The four-inch width helps prevent buckling and breaking of the roadway caused by concrete expansion under heat. The width of an expansion joint at an overpass is especially critical because the roadway slab may expand into the bridge roadway, causing structural problems with the overpass.
The trial court correctly concluded that the expansion joints and roadway at the Hamilton Road overpass did not pose an unreasonable risk of harm to the plaintiff.

DECREE
For reasons herein stated, the trial court's judgment is affirmed at plaintiff's costs.
AFFIRMED.
NOTES
[1] Plaintiff argues the trial judge deferred ruling on his experts' qualifications and urges that we supply a ruling. Mr. Doyle was accepted as a reconstruction expert, but not with a special emphasis in motorcycles. A trial judge's determination of an expert witness' qualifications will not be overturned absent abuse of discretion. Harrington v. Velinsky, 567 So.2d 148 (La. App.2d Cir.1990); LSA-C.E. 702 Comment (d). We find no abuse in the judge's discretion and further note that he allowed plaintiff to reurge Mr. Doyle's qualifications following the entirety of his testimony, which plaintiff failed to do.

With respect to Mr. Evans, the trial judge apparently read the deposition and considered his testimony. In his written opinion, the trial judge refers to "experts," indicating he considered Mr. Evans' opinions. For the purposes of this appeal we know of no reason why Mr. Evans, accepted in Lewis v. State, Department of Highways, 510 So.2d 710 (La.App. 1st Cir.1987), writ denied 514 So.2d 128, as an expert, should not have been accepted as an expert in this case. We have treated his testimony and opinions as if the trial judge formally accepted him.
[2] All three of the experts in the present case also testified in Lewis v. State, Department of Highways, supra.